MARY J. LOSEY, *Appellant*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee.*

No. 16,867.

SYLLABUS BY THE COURT.

1. RAILROADS—*Duty to Give Warning to Shippers Walking in the Yards.* Evidence that at a railroad station where cattle in shipment were frequently detained at night it was customary for persons accompanying live stock in transit to walk back and forth over the yards, between their cars and the depot, is sufficient to justify a finding that the company owed a duty to such persons so engaged to give a warning of the approach of a train.

2. CONTRIBUTORY NEGLIGENCE—*Shipper Injured While Walking in Railroad Yards.* One who is accompanying live stock in shipment, and has occasion to walk at night between his train and a depot, can not be said as a matter of law to be guilty of negligence if in attempting to walk in the safe space between two tracks he inadvertently gets close enough to one of them so that he is struck by an approaching train.

3. ——— *Failure of Shipper to Carry a Lantern, as Required by His Contract.* Where under such circumstances a shipper is killed by being struck while walking near a track, by a freight train running backward without a sufficient watch being maintained at the rear, and without a whistle or bell being sounded, the fact that he was not carrying a lantern, although his shipping contract required him to do so, does not as a matter of law bar a recovery of damages on account of his death, since it does not conclusively prove that if he had carried a lantern he would have escaped injury.

4. EVIDENCE—*Testimonial Knowledge of Witness*—*"I Think."* The ordinary presumption is that a witness who uses the expression "I think" means that his observation was indistinct or his recollection uncertain regarding the matter testified to, rather than that he is without personal information on the subject.

Appeal from Clay district court. Opinion filed March 11, 1911. Reversed.

*F. B. Dawes, R. C. Miller,* and *C. P. Rutherford,* for the appellant.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the appellee.

The opinion of the court was delivered by

MASON, J.:    Mary J. Losey sued the Atchison, Topeka & Santa Fe Railway Company, alleging the death of her husband to have been caused by its negligence. A demurrer to her evidence was sustained, and she appeals.

There was evidence tending to show these facts: The deceased, Robert M. Losey, was accompanying a shipment of live stock and household goods. The train arrived at Strong City about ten o'clock at night, and was placed on a siding, his car being about a block and a half east of the depot. Losey, with two other shippers, G. F. McClean and James H. Russell, went to the depot to learn when their train would leave, and were informed that it would not go out before morning. After eating at a restaurant they returned to the train to look after the stock and lock the cars for the night. They then started back to the depot to spend the night, the weather being cold. They walked west between the track on which their train stood and a track lying between four and five feet north of it; one witness said it was about four feet from the south rail of the north track to the cars on the other track. They all walked between the tracks, nearly abreast, Losey on the right,

McClean on the left, and Russell a little behind them.
When they were about half way to the depot the rear
car (a coal car—that is, a flat car with a coal bin on top
of it) of a part of a freight train backing west over the
north track, at the rate of about five miles an hour,
struck Losey, throwing him under the wheels and caus-
ing his death.   His companions were listening, but
heard no bell or whistle.   They looked up the track
before starting, but saw no train.   None of the three
carried a light of any kind.   There was no person on
the rear end of the rear car, but a brakeman with a
lantern was on the other end of it or on the nearer end
of the car next to it.   A string of freight cars stood on
a track north of that on which the accident occurred.
These cars, with those of the train to the south, in-
creased the darkness by cutting off a part of the light
from the street lamps.   There was still enough light,
however, so that a man could have been seen at a dis-
tance of two car-lengths.   It was usual for shippers of
live stock, while waiting at Strong City at night, to
walk back and forth between their cars and the depot,
over the railroad yards, as Losey did.   After McClean
had described the manner in which he and the two
others walked between the tracks, this question was
asked on cross-examination: "Mr. Losey, then, must
have been walking on the ends of the ties of the track
upon which the train was approaching, was he not?"
He answered: "I rather think he was."   Russell also
testified that he believed Losey was walking on the
ends of the ties.   Russell himself was walking south
of the ends of the ties and was struck on the right
shoulder by a coal car.   It was not shown whether or
not the ground between the tracks was surfaced up
level with the ties.

It may fairly be inferred that it was sufficiently
common for shippers of live stock to be walking at
night near where the deceased was killed, so that the
presence of somebody at that place was reasonably

to have been expected.   Therefore there was room for
a finding that. the trainmen owed a duty to Losey to
give warning of the approach of the train, for the evi-
dence tends to show that he was not a trespasser, nor
a mere licensee; that he was engaged in a legitimate
errand incident to the proper care of his car, and was
subject to the rule applicable to a shipper in charge of
stock on a freight train.   (*Coon v. Railway Co.*, 82 Kan.
311.)   The fact that McClean and Russell heard no
bell or whistle, although they were listening, justifies
an inference that none was sounded, unless the train
was so long that the sound would not carry the dis-
tance.   In that case, there was warrant for holding the
railroad company to the requirement of maintaining
an efficient watch at the rear.   Although the brakeman
on the train may have been in a position to see the three
men, the fact that he gave them no warning would
support a finding that he was not keeping a sharp look-
out, since there was evidence that a man could be seen
at a distance of two car-lengths.   The alternative would
be that he did see them but remained silent—a less
favorable supposition for the defendant.   Upon these
grounds we conclude that upon the issue of whether
the company was negligent there was sufficient evi-
dence to go to the jury.

   A more difficult question is whether the deceased was.
himself, as a matter of law, guilty of such negligence
as prevents a recovery.   He was not in the situation
of an ordinary passenger; that is, he was not absolved
from all duty to watch for approaching trains.   He was
required to exercise care in that regard for his own
protection, adapted to the circumstances.   (*Coon v. Rail-
way Co.*, 82 Kan. 311.)   If when struck he had been
walking upon the track between the rails, while he
might with equal convenience have walked in safety
between the tracks, no recovery could be had, because
it would then be clear that he had voluntarily and un-
necessarily chosen an unsafe place in lieu of a safe

one. (*Railway Co. v. Schwindt*, 67 Kan. 8; 33 Cyc. 826.) If he had been walking upon the ends of the ties as a matter of deliberate choice the situation would have been substantially the same, since he must have known that the danger there was as great as between the rails. Or if he occupied that position unconsciously, but by reason of a failure to use ordinary care to avoid it, his negligence would bar recovery. But if he attempted to walk in the safe space between the two tracks, and while using reasonable diligence to that end inadvertently came within the overhang of the cars and so met his death, he was not guilty of contributory negligence. We think the evidence is not necessarily inconsistent with the last hypothesis, and therefore that he can not be said to have been negligent as a matter of law. He was of course in fact quite close to the track on which the train was approaching, but he may have supposed that he was near the middle of the space between the two tracks. In the yards, within so short a distance from the depot, it is not unreasonable to suppose the ballast between the tracks was surfaced even with the ties, the contrary not being shown and the burden of proving contributory negligence being on the defendant. The presence of the freight train on the track to Losey's left may have made it easier for him to misjudge his position, or caused him involutarily to incline to the other side, bringing him within reach of the cars on the right-hand track without his realizing it. Such an error under the circumstances can not be said conclusively to show a want of ordinary care. It can not be said with certainty that the exercise of reasonable diligence would enable one so situated to keep within the narrow zone of safety. Of a somewhat similar situation it was said, in *Chicago, B. & Q. R. Co. v. Troyer*, 70 Neb. 293:

"It is . . . argued . . . that, in stepping to one side of the center of the path between the tracks where he was walking so as to come in the path of the

projecting portions of the engine, his act was equivalent to stepping between the rails of the track with knowledge, which he is shown to have possessed, that this track was being used by passing engines and cars, used in and about the business of the company in its freight yard, where the injury occurred. . . . A person in walking between the two tracks . . . would, at times, in all probability, and perhaps unconsciously, swerve his body from the true center line so as to come within the path of the overhanging parts of a car or engine moving on the adjacent track. Under such circumstances, we can not believe that negligence ought, as a matter of law, to be imputed to one who, while thus traveling, permitted himself to depart from the straight and narrow path in so slight a degree and, because of which, came in collision with a moving object on the track, the coming of which he was wholly unconscious of." (pp. 303, 304.)

The language quoted is obviously in point, although the decision in support of which it is used might perhaps be distinguished from the present one upon various grounds. With this possible exception, none of the many cases cited in the plaintiff's brief quite reaches the precise point here involved. A number of them relate to the duty of looking and listening before crossing a track or while necessarily or excusably upon a track. There is abundant authority for the proposition that if one is rightfully upon a track the question of how often he must look for an approaching train in order to show due diligence is one for the determination of the jury. But the contention of the defendant is that Losey was negligent in unnecessarily placing himself in a position of peril. In the cases most nearly resembling the present one the following differences may be noted. In two the public were accustomed to use the railroad track as a pathway, and it does not appear that there was a safe place by the side of the track. (*Stanley v. Railroad Company,* 120 N. C. 514; *Bourassa v. Grand Trunk Ry. Co.* [N. H. 1909] 74 Atl. 590.) In two a person walking between two tracks

got upon one of them in avoiding an engine which approached him on the other, occasioning some fright and confusion on his part. (*Laverenz v. The C., R. I. & P. R. Co.,* 56 Iowa, 689; *Ray v. Railroad,* 141 N. C. 84.) In another the space between the tracks, although as a matter of fact reasonably safe, was "not wholly free from obstructions, more or less formidable to those walking after night." (*Chicago, St. P., M. & O. R. Co. v. Lagerkrans,* 65 Neb. 566, 572.)

A shipping contract had been issued to and signed by Losey, which included an agreement as to his conduct thus expressed:

"We, the undersigned, owners or in charge of the live stock  . . .  mentioned in the within contract . . . agree that . . . [we] will not walk or stand on any track or station or other places at night or in the dark without a lantern, and will not be upon or attempt to cross any track while switching is being or is about to be done thereon, or cars moved thereon, but will first use every effort to ascertain whether it is safe to go upon or across said track or tracks."

Except for a reference to a lantern, this language does not materially alter the situation, since with this exception the obligation assumed is substantially what the law would impose in any event, being implied in the requirement that the shipper should use reasonable diligence for his own protection. Moreover, as already stated, the evidence does not conclusively establish that Losey's getting upon the track or too near the track was either intentional or negligent.

The failure to comply with the requirement regarding a lantern is not a bar to a recovery unless the evidence conclusively establishes that if the deceased had carried a lantern he would have escaped injury. The mere possibility or probability that such would have been the case is not enough. The omission to conform to the terms of such a contract is merely a form of negligence, and is frequently so spoken of. (*I. C. R. R.*

*Co. v. Beebe,* 174 Ill. 13, 21; *Chicago, R. I. & P. Ry. Co. v. Lee,* 34 C. C. A. 365, 368; *Texas and Pacific Railway v. Reeder,* 170 U. S. 530, 534.) In order to constitute contributory negligence it must be the proximate cause of the injury (29 Cyc. 526-528); that is, one without which the injury would not have occurred. (32 Cyc. 745, note 77; 7 A. & E. Encycl. of L. 371; 1 Thomp. Com. L. of Neg. § 221.) A lantern might have helped Losey to judge of his own true position with regard to the track, but would not necessarily have prevented a mistake; nor can the court say with certainty that it would have been of material aid in this respect, in view of the manner in which a light sometimes interferes with the vision of one who carries it. If it were established that the brakeman on the train had been keeping a lookout along the track it might be said that he certainly must have seen the lantern, although he might not have been able to see the men without it. But there is no conclusive evidence that the brakeman was in fact watching the track, or indeed any evidence whatever to that effect. Therefore it is not proved that the absence of the lantern caused the injury.

The court sustained objections to several answers given by witnesses, and a review of these rulings is sought. McClean, having testified that he had looked up the track before starting for the depot, was asked whether Russell and Losey had done the same. He answered, "I think they did," and the answer was stricken out. If a witness employs such an expression as "I think" or "I believe," meaning that his uncertainty results either from lack of close observation of the fact originally or from want of clear recollection regarding it, his testimony is admissible, and the qualification goes to its weight; but if he means that he did not observe the fact at all, and so has no personal information regarding it, and has acquired his opinion from other sources, his testimony is incompetent. (1 Wig. Ev. §§ 658, 726, 727, 728, and cases cited; and,

also, additional cases in 5 Wig. Ev. § 728.) Ordinarily there may be something in the manner of the witness that helps to show what he really intends, but here this aid was not available, for the evidence was by deposition. Usually further questions develop the source of his belief, but here the subject was not pursued, either in direct or cross-examination. That a witness uses the expression "I think" does not of itself indicate an entire want of personal knowledge on the subject, and in the present instance there is nothing in the circumstances to suggest that such meaning was intended. The witness had an opportunity to observe the conduct of his associates, and when he says that he thinks they looked up the track he must be deemed to be speaking from his observation and recollection, rather than from his judgment of what they would have been likely to do.

In answer to the question whether Losey and McClean looked up and down the track at the same time he did, Russell answered, "I could n't say as to that, but I rather think they did." This is not essentially different from the reply given by McClean. We think the natural presumption is that the witness meant that he could not speak with certainty, but thought he had observed such conduct on their part.

McClean was also asked whether there was a brakeman or other person on the rear end of the car that struck Losey. He answered, "I don't think there was; I think he was likely in the second car." This, as well as another similar answer, was stricken out. The witness testified in substance that at the time of the accident he did not know what had happened until he had assisted Russell, who had been hit; that he then looked up and saw the cars going by; that about opposite him he saw a man with a lantern on the rear of the first car or the front end of the second, who came down from the car and proved to be a brakeman; that a few minutes later several other persons came. This shows

enough actual observation to give a basis for the testimony.

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.

BURCH, J. (dissenting): In order that the appellee may discharge its public duties as a common carrier it is entitled to the exclusive possession of its switch yards and tracks, and it owes no duty to be cautious toward one who enters upon such property without right.

"A railway company has exclusive right to occupy, use and enjoy its railway tracks, trestlework, and bridges, and such exclusive right is absolutely necessary to enable it to properly perform its duties, and any person walking upon a track or bridge, or any part of the same, of a railway track [company] without the consent of the company, is held in law to be there wrongfully, and therefore to be a trespasser; and in case of an injury happening to such person while so trespassing upon it, from the movement or operation of the cars of the company over it, he is without remedy, unless it be proved by affirmative evidence that the injuries resulted from negligence so gross as to amount to wantonness." (*Mason v. Mo. Pac. Rly. Co.*, 27 Kan. 83, syl. ¶ 3.)

The need of shippers to walk through the yards at Strong City and the danger attending such conduct had been considered by the appellee. If such persons were allowed to roam at will about the yards, along and across the tracks, and among moving trains of cars, the appellee would be obliged to put into effect a special set of regulations for the handling of its business and the protection of stockmen at that point. So the appellee chose to withhold liberty to use its grounds except upon certain definite and specific conditions. By mutual agreement with Losey it was provided that he would not walk upon any track or other place at night or in the dark without a lantern (evidently to

guide his own footsteps and to disclose his where-
abouts to trainmen), would not be on any track while
switching was being done, and would use every effort
to ascertain whether it was safe to go upon or across
the tracks. The matter was a fair subject of contract,
and the conditions imposed were reasonable and bene-
ficial to both parties. Two of these provisions were
positive conditions, and the third superseded the com-
mon measure of prudence with the requirement that
Losey should use the utmost effort to avoid danger.
This contract was the source and measure of Losey's
right. It gave him a privilege which he did not other-
wise possess, and unless he complied with its terms he
could not justify his presence at the place where he
was injured. The appellee's duty was measured by
the same contract, and Losey could not at will substi-
tute in his own favor another right and another duty
by a deliberate disregard of his contract. He was
obliged to regulate his conduct by his contract. (*Leslie
v. Railway Co.*, 82 Kan. 152.)

Whatever the appellee's relation to other shippers
may have been, its liability in this case can be founded
only upon a breach of the duty which it owed to Losey.
(*Express Co. v. Everest*, 72 Kan. 517, 522; *Carey v.
Railway Co.*, post.) The fact that other shippers of
stock were accustomed to walk through the yards
means nothing. Probably it occasioned the contract
with Losey. There is nothing to show that the other
shippers referred to were under contract not to do as
they did, and in any event Losey's contract can not be
avoided by proof of a custom. (*Ft. S. W. & W. Rly.
Co. v. Sparks*, 55 Kan. 288, 297.)

No monitor was needed to tell Losey that walking at
night, without a light, down a railroad track in crowded
yards where switching was going on, was dangerous.
If so, the track and the surroundings were sufficient,
and his contract was sufficient.

The result is that the appellee owed no duty to

Bank v. Freeburg.

Losey except not to injure him wantonly when he went about the yards at night without a lantern, and when he went upon the track while switching was being done; and, having voluntarily placed himself in a position of danger, in violation of the terms of his contract, an action for damages resulting from his injury can not successfully be maintained.  (*Ft. S. W. & W. Rly. Co. v. Sparks,* 55 Kan. 288, and cases cited at page 295.)

I am authorized to say that Mr. Justice Porter also dissents.