# INGA GJORVAD v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

December 15, 1911.

Nos. 17,251—(79).

**Injury to car inspector — construction of defendant's rule — contributory negligence.**

In this action to recover damages for the death of plaintiff's intestate claimed to have been caused by the negligence of defendant, it is *held:*

1. That whether an engineer of defendant was negligent in backing his engine and the cars attached thereto without a signal to do so and without warning, and whether such act was the proximate cause of the accident, were on the evidence questions of fact for the jury, and that the verdict is sustained by the evidence as to these questions.

2. A rule of defendant providing that car inspectors and repairers must not go between or beneath cars, or do any repairs between or beneath cars, while cars are being switched in or out of trains, construed, and *held* to apply only where such inspectors and repairers are actually engaged in the work of inspecting or repairing cars.

3. Whether plaintiff's intestate was guilty of contributory negligence was, on the evidence, a question of fact for the jury, and the evidence sustains the verdict on this point.

Action in the district court for Hennepin county by the administratrix of the estate of Peter Gjorvad, deceased, to recover $5,000 for the death of her intestate. The reply was a general denial. The case was tried before Dickinson, J., who at the close of the evidence denied defendant's motion for a directed verdict in its favor for the

[1] Reported in 133 N. W. 609.

---

[Note] As to rules for the protection of car repairers, and other railroad employees doing work on side track, see note in 43 L.R.A. 326.

reasons stated in the second paragraph of the opinion and for the further reason that decedent assumed the risk, and a jury which returned a verdict in favor of plaintiff for the amount demanded. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed.   Affirmed.

*John L. Erdall* and *Alfred H. Bright,* for appellant.
*Larrabee & Davies* and *Solem & Solem,* for respondent.

BUNN, J.

Peter Gjorvad was killed in the railway yards of defendant at Minneapolis on September 18, 1909, and this action was brought to recover damages for his death.   The charge of negligence was, in substance, that defendant negligently backed a train of cars in violation of signals, thereby causing the accident.   Defendant denied its negligence, and pleaded assumption of risk and contributory negligence.   A motion of defendant for a directed verdict was denied, and the case submitted to the jury, which returned a verdict of $5,000 in favor of plaintiff.   Defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

Defendant contends: (1) That there was no evidence of actionable negligence on its part, or at least that the evidence does not sustain the verdict on this point; and (2) that it conclusively appears that plaintiff was guilty of contributory negligence, or at least that the finding of the jury is not sustained by the evidence in this respect.

There was evidence that justified the jury in finding true the following facts.

In a part of defendant's railway yard there are twelve tracks running east and west, connected with lead tracks at either end. Beginning at the west end, the grade is down for about two-thirds of the distance to the east end.   From this point the grade is level until the east lead is approached, and from there there is a steep upgrade.   Each switch track would hold fifty cars.   When a train pulled into the yard from the west, and was too long to stand on one track, the head brakeman would uncouple so much of the head end

as was necessary, throw the switches, and give signals to switch the uncoupled cars onto the proper track.

The train in question was made up of sixty-two or sixty-five cars, and came into the yards from the west on track 9. Directions were given to set the head end on track 8. The conductor had gone to the office to register his train, and the rear brakeman was at the rear. In order to clear the switches, it was necessary to pull the head end up the grade and over the curve of the easterly lead track.

The head brakeman, after the train had come to a stop, walked back, and pulled the pin uncoupling the head twelve or fourteen cars. When the train approached the east end of the yard, he noticed a man sitting with a lantern by the side of track 8, between tracks 8 and 9, four or five car lengths from the lead track. He noticed the same man again sitting with his lantern between tracks 8 and 9, about opposite the place where the uncoupling was made, and after the pin was pulled he noticed the man with the lantern about opposite to where the cut was made, but between tracks 9 and 10. After pulling the pin, the head brakeman walked ahead about four car lengths in order to be able to signal the fireman, and there gave a signal to go ahead. The engineer put on steam, but was unable to pull the cars out.

The evidence here is conflicting—the head brakeman testifying that on this forward movement the cars opposite the place where he was standing, four or five car lengths ahead of the cut, moved from one to five feet, which would mean that the cars which had been cut from the train separated perhaps three or four feet, on the first forward movement, from the cars to be left on the track. We consider the evidence sufficient to justify the jury in finding that the sections of the train were thus separated. The engineer, being unable to move the train further, reversed his engine and backed in order to "bunch the slack." This was done without a signal and without warning. At the moment this backward movement started the man with the lantern, whom the head brakeman had before observed, and who was clearly Gjorvad, was seen to start to go between the cars at the place where the cut had been made. He was found soon afterwards dead, with his body lying on the track, at such a

point and with such marks of injury that the jury was justified in finding that he had been crushed between the two sections of the train.

Gjorvad was a car inspector in the employ of defendant. His duties were to inspect at night twenty-five or thirty refrigerator cars at all points in the yards in question. He had worked in these yards for ten years, and was undoubtedly familiar with the methods and customs in force in the yard as to switching. The rear car of the twelve or fourteen cars attached to the engine was a refrigerator car, and the inference is justified that Gjorvad was waiting to see where it was to be placed, intending to there inspect it, and that he attempted to cross between the two sections of the train in order to reach the place where the car was to be left.

1. We think the question of the engineer's negligence was for the jury, and that the evidence fairly sustains the verdict on this issue. As stated, no signal to back up was given the engineer, and he gave no signal or warning of his intention to back his train. If, as the evidence tends to show, the two sections were separated three or four feet, and the head end had come to a stop, it would seem only ordinary care for the lives of men working about the train or in the yards to give notice of a reverse movement that might cause the two sections to come together.

The evidence of a custom to whistle three short blasts under such circumstances is not to be disregarded. We are not to be understood as holding that an engineer must give warning signals each time he intends to "bunch slack"; but where that proceeding is apt to move the rear car, so as to cause it to collide with other cars, it is only just to require some signal or warning. We cannot hold that the engineer, in the exercise of reasonable care, could not have anticipated that some employee of defendant might be in a position to be injured by a backing of the cars without warning. It was a question for the jury whether the act of the engineer was negligent, and whether it was the proximate cause of the death of Gjorvad.

2. The charge of contributory negligence is based in the main upon the claim that Gjorvad met his death because he violated a

rule of the company.   This rule was for car inspectors and repairers, and was as follows:

"You must not go between or beneath cars, or do any repairs between or beneath cars, while cars are being coupled in trains, or while being switched in or out of trains.   *Under no circumstances must you inspect or repair cars anywhere without first putting a red flag by day or a red lantern by night at the ends of cars or trains.*"

This rule had been long in force, and there is no doubt that Gjorvad knew its provisions.   But it is quite clear, construing it, as we should, favorably to the servant, that it was intended only to govern car inspectors and repairers while engaged in their duties of inspecting or repairing cars.   The rule says to inspectors and repairers: "You must not inspect or repair cars without first putting a red lantern   *   *   *   at the ends."   "You must not go between or beneath cars [in inspecting them], or do any repairs between or beneath cars, while cars are being coupled   *   *   *   or while being switched."   It does not, we think, forbid an inspector from going between cars that are being coupled or switched in or out of trains, when he is not inspecting those cars, but simply making his way to a place in the yards where his duties call him.

It is doubtless often necessary for the inspector to go between cars in order to reach the car he is to inspect, and the danger in so doing is not to be compared with the danger to be apprehended when the inspector or repairer is actually performing his work, absorbed in it, and in a position where he would find it difficult to escape injury if the car at which he was working was suddenly struck by an engine or other cars moving in the yards.   The rule must be read as a whole, and, doing so, it is apparent that it was intended as a protection of the inspector or repairer while engaged at his work, and not as governing his actions at other times.

As we have intimated, there is no evidence that Gjorvad was inspecting the refrigerator car at the time he was killed.   Under the rule he was not permitted to do so until the car had been placed, and until he had put a red lantern at its end.   We cannot presume that he was violating the rule, but must presume that he was making

his way to the place where the car would be placed, probably remaining near it in order to watch its movement. We hold, therefore, that the rule in question did not apply, and that Gjorvad was not guilty of its violation.

3. It remains to be considered whether deceased was guilty of contributory negligence as a matter of law, irrespective of the rule. Assuming, as we think we must, that the evidence warranted the jury in finding that the head end of the train had come to a standstill, with a space of three or four feet between the rear car and the stationary cars, Gjorvad would have a right to assume, in the absence of a signal from the engineer, that the head end would not back, and therefore that it would be safe to pass between the cars. We are not prepared to say that it was conclusively a reckless or dangerous act. We think that the question was for the jury, and that the evidence is not so against the verdict that we ought to reverse the action of the trial court approving it.

Order affirmed.