M. O. HANSON, *Appellant*, v. THE ATCHISON, TOPEKA &. SANTA FE RAILWAY COMPANY, *Appellee.*

No. 17,854.

SYLLABUS BY THE COURT.

1. SHIPPING STOCK—*Intermingling of Cattle—Damages.*  Where the employees of a railroad company, in unloading cattle from a train, to be fed and watered, intermingle the animals of two shippers, in violation of directions to keep them separate, the carrier is liable on account of loss of weight and other injuries which naturally result from the handling of the cattle thereby made necessary in order to effect their separation.

2. ——— *Agency—Evidence of Authority.*  The evidence held to support a finding that a person to whom such directions were given was an agent of the railway company.

3. ——— *Cattle Exchanged—Damages.*  A shipper who under such circumstances has received several inferior cattle of the other owner in place of his own, can not recover damages from the railroad company on account of the exchange, where he has made no attempt to avail himself of a subsequent opportunity to correct it.

Appeal from Greenwood district court.  Opinion filed December 7, 1912.  Reversed.

*Howard J. Hodgson,* and *Gordon A. Badger,* both of Eureka, for the appellant.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.:  M. O. Hanson sued the Atchison, Topeka & Santa Fe Railway Company for damages, alleged to have been occasioned by the company's employees.

wrongfully intermingling cattle shipped by him with those of another shipper. A demurrer to his evidence was sustained and he appeals. The evidence tended to show these facts among others: He had purchased near Garden City 81 head of three-year-old steers from a herd which also contained some two-year-olds which were bought at the same time by Haleck Barg. The cattle were separated, and were shipped to Climax by the same train but in different cars. They arrived at Emporia at night and were there unloaded by the company's employees to be fed and watered. The plaintiff and Barg saw two men with a lantern on the station platform near where the cars stopped, close to a cattle chute. Understanding that these men were employees of the company, they gave them the numbers of the cars and told them to be sure to yard each load separately and put them back in the same cars. They said they would do so, and at once went to the door of one of the cars. One of them was handling the planks used in unloading cattle. The next morning the shippers discovered that all the cattle had been turned into one inclosure, and it took about three hours to separate the plaintiff's from those belonging to Barg, as they bore the same brand and were distinguishable chiefly by their size. The day was very warm, and this handling resulted in a shrinkage estimated at from 15 to 100 pounds per head.

This evidence was sufficient to make a *prima facie* case of liability on the part of the defendant, if the men who were instructed to keep the cattle of the two shippers separate were in fact employees of the railroad company. There was testimony that one of them assisted in dividing the cattle the next morning and opened the gate at the stockyards as they were being driven out. With the evidence already stated, this was probably sufficient to justify an inference that he was an agent of the company. (*Olson v. Bank,* 78 Kan. 592, 96 Pac. 853; *Heinz v. Light Co.,* 81 Kan. 261, 105

Pac. 527.) Moreover, there was direct as well as circumstantial evidence of his agency. The defendant accepted responsibility for the acts of the employees of the stockyards company. The night foreman of that company was present at the trial, and the plaintiff testified that, while he would not swear to it, he thought this was the man to whom he gave the directions. He added—"I would like to go a little further, he told me the next morning that he was the man." This was some evidence of identity. The uncertainty of the witness went to the weight of his testimony, not to its competence. (*Losey v. Railway Co.*, 84 Kan. 224, 114 Pac. 198.)

The suggestion is made in behalf of the defendant that the plaintiff "voluntarily" chased the cattle around in an effort to separate them, and should abide by the consequences of his own act. According to the evidence, however, this handling of the cattle was made necessary by the fault of the company's employees in failing to keep them separate.

It was shown that a complete separation of the cattle was not accomplished, Barg getting two of the plaintiff's animals, and the plaintiff two of his, of less value. The plaintiff was not entitled to a recovery on this feature of the case. He was not deprived of the ownership of the two steers belonging to him which were loaded into Barg's car. They were taken to Barg's farm, about a mile and a half from his own. The railway company might have been liable for the expense of making an exchange, but as none was effected or attempted the adjustment of the difference in value was a matter between the two owners.

Complaint is made of the questions asked of the plaintiff on cross-examination with respect to a written contract of shipment, but as the contract itself was not admitted no prejudice could have resulted.

The judgment is reversed and a new trial ordered.