No. 19,930.

IDA M. DEGITZ, *Appellee*, v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant*.

No. 20,125.

MARIAN HAUSERMAN, *Appellee*, v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. WRONGFUL DEATH—*Injuries to Licensees While Inspecting Cars—Negligence of Switching Crew*. At a junction of two railroads a certain track owned by one of the railroad companies was designated as a transfer track and was used by both companies for the purpose of the transferring of cars from one line to the other. Before a transfer was made, an inspection by the receiving company was required, and it was the custom for the delivering company to place cars intended for transfer upon the transfer track. When they were so placed they were supposed to be ready for inspection by the inspectors of the receiving company. The delivering company had notified the receiving company that an incoming train had a car of live stock intended for shipment over the line of the receiving company, which had a train going out shortly after the arrival of the train of the other company. When the train of the delivering company pulled into the yard it placed three of the cars of the train apart from the others upon the transfer track. One of the three was not intended for transfer, and an effort was made to take it out at the north end of the transfer track, but that was found to be impracticable, and the three cars were then left together on the transfer track where cars were customarily placed for inspection and transfer. Inspectors of the receiving company then proceeded to make an inspection of the stock car, one of the three so set apart. The engine of the delivering company was taken around on another track to the south end of the yard and there attached to the remaining cars of its train, and without any signal

or warning the train was pushed up with considerable violence against the three cars set apart, one of which was being inspected, and the collision resulted in killing two inspectors. In an action to recover for their death it is held that they are to be regarded as invitees, and that under the circumstances the delivering company was bound to anticipate that inspectors might be about the cars, and that reasonable care should have been exercised and reasonable warning given to them of the approach of the train before colliding with the cars so set apart; and whether the delivering company. was guilty of negligence or whether the inspectors were guilty of contributory negligence were questions for the determination of the jury.

2. SAME—*Evidence Supports the Findings.* The evidence examined and held to be sufficient to support the special findings made by the jury, which in effect held that the defendant was negligent and that the deceased inspectors were not guilty of contributory negligence.

Appeals from Geary district court; ROSWELL L. KING, judge. Opinion filed April 8, 1916. Both affirmed.

*W. W. Brown, James W. Reid,* both of Parsons, and *W. S. Roark,* of Junction City, for the appellant.

*James V. Humphrey,* and. *Arthur S. Humphrey,* both of Junction City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: Two actions were brought against the Missouri, Kansas & Texas Railway Company for damages, one for the death of Louis Degitz, the other for the death of Edward W. Hauserman, both employees of the Union Pacific Railroad Company, who were engaged at the time they were killed in inspecting a car which had been placed upon the transfer track of defendant in Junction City. The jury in each case rendered a verdict for the plaintiff and also made certain special findings. The cases were tried separately, and as both men were inspecting the same car and were killed by the same movement the issues and the testimony in the cases were substantially similar. The appeals were argued together and they may be disposed of in a single opinion.

Junction City is a terminal point of the Missouri, Kansas & Texas railway, which enters the city from the south, and its main track running north and south connects with the main line of the Union Pacific. East of the north end of the Missouri, Kansas & Texas main track it has a switching yard

composed of four sidetracks running parallel to the main track and connected with the latter by means of two connecting tracks, one at the north running in a northwesterly and southeasterly direction, and one at the south running in a southwesterly and northeasterly direction. These were known as the north and south "leads" and the distance between them where they touched the main track was approximately fourteen hundred feet. A large proportion of the cars arriving on the Missouri, Kansas & Texas were consigned to points on the Union Pacific, and by an agreement between the two roads this part of the main track between the leads was designated as a transfer track, where cars that were to be transferred to the Union Pacific were placed to be taken over by the latter road. It was the usual custom of the Missouri, Kansas & Texas to pull their trains in upon this transfer track, leaving the cars to be transferred near the north end of that track, then run the engine over the north lead to one of the sidetracks and go to the south end of the train where it would switch out and place on the sidetracks all the cars not destined to points on the Union Pacific. Before cars consigned to the Union Pacific were taken over by the latter they were always inspected by employees of that road, and whenever a car of live stock or perishable freight came in consigned to the Union Pacific the Missouri, Kansas & Texas would give the other road notice so that the car could be inspected in time to get it started out promptly on the Union Pacific.

The accident in which Hauserman and Degitz were killed occurred about ten o'clock at night on December 3, 1913. A Missouri, Kansas & Texas train consisting of ten cars and caboose had arrived and was pulled upon the transfer track. A number of the cars were to be consigned to the Union Pacific, and that company had been notified during the afternoon that one of these cars in the train contained live stock. Three of the cars were cut off of the train and left up at the north end of the transfer track. The southernmost car of the three was not intended to be transferred to the Union Pacific, and it appears that the crew of the train undertook to place the third car on one of the sidetracks by running the three cars up to the north lead, but they were unable to get in at that end as there was not room for the engine and three cars to get past

the north switch without encroaching upon the yard and tracks of the Union Pacific. Then the three cars were pushed back and left on the transfer track about six hundred feet from the remaining cars of the train. The engine alone was then taken around by way of the third sidetrack to the other end of the yard and went in on the south end of the transfer track and coupled to the caboose and the other cars of the train left at the south end. The train was then pushed north on that track, and with considerable force, against the three cars which had been left on the north end, including the car of live stock, which was the northernmost of the three. When the engine left the three cars at the north end, the inspectors Hauserman and Degitz and an assistant named Fink proceeded to inspect the live-stock car which it was anticipated would be picked up by the Union Pacific and attached to a train which was due to leave shortly after the arrival of the Missouri, Kansas & Texas train. On opening the boxes it was discovered that some packing was necessary, and Fink was sent for waste to pack the boxes. It appears that he went a distance of about two hundred and fifty feet, and on returning with the waste heard the contact of the train with the three cars which had been left at the north end, also an outcry from some one, and then discovered Degitz and Hauserman underneath the north truck of the stock car. Hauserman was dead. Degitz was still living but died shortly after he was found.

The inspectors, it appears, carried lanterns with reflectors at one side, but apparently their lights were not seen by the trainmen of the defendant. It is evident that the inspectors thought that the cars placed at the north end had been left for inspection, as they began the work of inspection shortly after the cars had been placed there. It appears that during the afternoon a dispatch had been sent by the defendant to Junction City to the effect that probably a car of live stock would be on the defendant's train destined for Kansas City over the Union Pacific railroad, and this message had been brought to the attention of the Union Pacific agent. The defendant's train, which was due about six o'clock that evening, did not arrive until after ten, and the Union Pacific train, which was scheduled to leave Junction City at 9:30 p. m., did not, on some account, leave that night until 11:50 p. m. Whether the

delay was due to the happening of the accident is not definitely shown. Under railroad regulations inspection of the car was required. Because of the character of the shipment and the shortness of the time to make the transfer it was necessary that there should be promptness and dispatch in the inspection. The inspectors were informed of the arrival of the train and that a car of live stock would be placed on the transfer track for inspection. They went over to that track and found three cars set out upon it, one of which was the stock car, which they proceeded to inspect, beginning on the west side of the car. Fink, the assistant inspector, said that he saw Degitz start around the north end of the car, but no witness saw them at work on the east side of the car. Degitz, who was alive when found, said, according to one witness, that "We were walking around the end of the car when they hit us." A witness of the defendant quoted Degitz as saying: "We started around the end of the car headed west when they coupled into us." A verdict was rendered in each case in favor of the plaintiff, and with them special findings to the effect that the part of the track where the inspectors were killed had been designated by agreement as a transfer track on which cars intended for delivery to the Union Pacific should be set; that it was the custom of the inspectors of the Union Pacific to inspect cars when placed upon that track; that the stock car in question had been placed on this track in the usual manner and apparently for inspection and delivery; that it was the practice to make reasonable efforts to get cars of live stock, which had been brought in by the defendant and destined for Kansas City, taken out on the same evening by the Union Pacific; that the deceased inspectors had been notified of the arrival of the car and were proceeding to inspect it in the usual manner when they were killed; that defendant's employees suddenly bumped cars into the one they were inspecting, with unnecessary force and violence, and without giving any signal or warning; that these employees should have anticipated the presence of the inspectors, and by the exercise of ordinary care would have discovered them in time to have avoided the accident; that the inspectors had been engaged in inspecting this car from two to five minutes when they were struck and killed and had not had time to finish their work;

that the negligence of the defendant on which the verdicts were based was reckless, careless switching; and that the deceased inspectors were not guilty of contributory negligence.

There is little dispute between the parties as to the principles of law involved, but it is urged by the defendant that the evidence does not sustain the special findings or the general verdict returned by the juries, and further, that it does establish contributory negligence on the part of the deceased inspectors. There is a contention that under the circumstances the defendant owed no duty to the inspectors except to refrain from wantonly injuring them; that the defendant had not yet finished the switching, and the car that was being inspected had not been finally delivered to the Union Pacific company, and hence the inspectors were not warranted in going upon the transfer track for inspection nor for any other purpose. The inspectors can not be regarded as tresspassers, nor can the duty owed by the defendant to them be measured by the rule of care due to trespassers. While the defendant owned the track on which the car had been placed, that track had been dedicated to the use of both companies for transfer purposes, and the defendant was bound to anticipate that employees of the other company would be on or about the track and was therefore required to exercise reasonable care for their safety. (*Linker v. Railroad Co.*, 82 Kan. 580, 109 Pac. 678; *Losey v. Railway Co.*, 84 Kan. 224, 114 Pac. 198; *Aaron v. Telephone Co.*, 89 Kan. 186, 131 Pac. 582; *McMarshall v. The Chicago, R. I. & P. Ry. Co.*, 80 Iowa, 757, 45 N. W. 1065, 20 Am. St. Rep. 445; *C. N. O. & T. P. Ry. Co. v. Winningham's Admr.*, 156 Ky. 434, 161 S. W. 506; 33 Cyc. 811; 3 Elliott on Railroads, 2d ed., § 1265.) The cars had been set apart from the other cars of the train on the transfer track in the customary way of placing them for inspection and transfer. The engine had been uncoupled from them and taken to another part of the yard, and the situation so created indicated that the cars so separated had been left for inspection and transfer. It is true that one of the three so set out was a local car not intended for transfer, but the usual segregation had been made and no notice had been given of a purpose to couple on to them or that they were to be moved again. A different situation would have been presented if these cars had been

pushed back with the other cars of the train. All concerned knew that one of them was a stock car and that it must be expeditiously inspected in order to get it into the outgoing Union Pacific train and avoid the damage and liability that would result if the stock should be held over another day. Having separated these cars and placed them on the transfer track, as had been customarily done where cars had been set out for inspection, the inspectors naturally assumed that they might safely proceed with inspection. They are to be regarded as invitees and not trespassers and are entitled to the care due to those rightfully in and about the stock car. In the conditions which the defendant had created it should have anticipated that inspectors were likely to come there, it should have kept a lookout for them, and at least have given timely warning before moving the cars or bumping into them. (*Missouri & N. A. R. Co. v. Duncan,* 104 Ark. 409, 148 S. W. 647; *Lake Erie, etc., R. Co. v. Hennessey,* 177 Ind. 64, 97 N. E. 331; *Gjorvad v. Minneapolis, St. P. & S. Ste. M. Ry. Co.,* 116 Minn. 233, 133 N. W. 609; *St. Louis & S. F. R. Co. v. Cole,* [Okla. 1915] 149 Pac. 872; *El Paso & S. R. Co. v. Darr,* [Tex. Civ. App. 1906] 93 S. W. 166; *J. Rosenbaum Grain Co. v. Mitchell,* [Tex. Civ. App. 1911] 142 S. W. 121.)

It is urged that the deceased inspectors failed to take due care for their own safety when they entered upon the task of inspection. There is a finding by the jury exonerating them from this charge. The claim that they were not warranted in beginning work so soon has already been considered. Defendant insists that there was no occasion for them to go into a place of danger in making the inspection and that it could have been efficiently done from the sides of the car. A passing glance as a car moves by or a long-range view from the sides would hardly meet the requirements of a careful and proper inspection of a car that was to be transferred to another line. There is testimony to the effect that an inspector must examine drawbars, couplers, air cylinders, sills, underframes, hose, safety appliances and brake rigging, as well as ladders, doors, hinges and the upper parts of the cars. To inspect some of the parts it was shown to be necessary to go to the ends, as well as to lean over the rail and look underneath the car, and that it takes from two to ten minutes to accomplish an inspection. In

Degitz v. Railway Co.

inspecting the drawheads, couplers and the under parts of the car, it may have been necessary for the inspectors to examine from the ends of the car, or at least to lean over the rail so far that a violent and unlooked-for movement of the car would throw them underneath and into the positions in which they were found.

It is said that as Fink heard the engine moving on the east tracks of the yard and later saw the train moving from the south, they too should have observed these movements, and also that they should have seen the lights carried by the trainmen of the defendant as they approached the stock car. These were all proper considerations for the jury in determining whether due care was exercised by the inspectors for their own safety. These, with other testimony, only raise a question of fact for the determination of the jury, and that question has been decided against the contention of the defendant.

It is urged that under the rules the inspectors should have placed blue lights at the side of the car while they were in a place of danger during the making of the inspection. It appears, however, that the rule invoked is not applicable in an ordinary inspection, but is only to be applied when persons go under a car and in places of danger to make repairs. An illustration of the application of the rule may be found in *Pullin v. Railway Co.*, 96 Kan. 165, 150 Pac. 604. In view of the fact that the placing of blue lights was not required in cases of inspection, the criticism made upon an instruction which related to a waiver or abandonment of the rule is immaterial.

Nothing substantial is found in other criticisms of the instructions nor in the objections made to rulings refusing to require more definite answers to special interrogatories. An examination of the evidence satisfies us that under the rule governing a review of findings made by a jury there is testimony sufficient to uphold the special findings and the general verdict in each of the cases, and therefore the judgment in both of the cases must be affirmed.