No. 25,842.

CHARLES F. BURLEY, a Minor, by His Next Friend, J. F. CALLERY, *Appellant,* v. THE MISSOURI PACIFIC RAILROAD COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. APPEAL AND ERROR—*Review—Harmless Error—Selection and Impaneling of Jurors.* A judgment will not be disturbed for irregularities of the officers in selecting or preparing a list of jurors, unless it appears that the party complaining was prejudiced thereby—following *Hanson v. Kendt,* 94 Kan. 310, 146 Pac. 1190.

2. DAMAGES—*Personal Injuries.* Various alleged errors in an action for damages on account of personal injuries considered, and held not to be of substantial merit.

Appeal from Crawford district court, division No. 1; DANIEL H. WOOLEY, judge. Opinion filed July 11, 1925. Affirmed.

*Phil H. Callery, Sylvan Bruner, Caroline Lowe,* all of Pittsburg, *O. C. Mosman, Clay C. Rogers* and *Paul A. Buzard,* all of Kansas City, Mo., for the appellant.

*W. P. Waggener* and *J. M. Challiss,* both of Atchison, for the appellee.

---

1. Appeal and Error, 4 C. J. § 2932.　2. Id., 4 C. J. § 3190; 14 L. R. A. (N. S.) 603; 32 L. R. A. (N. S.) 307; 8 R. C. L. p. 92.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for damages on account of personal injuries sustained by plaintiff in falling from one of defendant's freight trains. The defendant prevailed and plaintiff appeals.

The plaintiff has abstracted neither the pleadings nor the evidence. From a counter abstract, filed by the defendant, it appears that plaintiff, a thirteen-year-old boy, was a resident of Kansas City, Mo., that he instituted this action in the district court of Crawford county, seeking to recover $150,000 damages for personal injuries sustained in falling from one of the defendant's freight trains. It developed upon the trial on plaintiff's examination, that he was an incorrigible youth, accustomed to stealing rides on trains; one who ran the streets at will, and on several occasions had been arrested; that at the time of the injury in question he was stealing a ride from Kansas City, Mo., to Guthrie, Okla. Other facts need not be narrated.

No complaint is made of the court's instructions nor of errors in the trial. The assignments of error all relate to the manner in which the jury was drawn, to the rejection of evidence relating thereto on the hearing of the motion for new trial, and to the fact that one of the jurors was hard of hearing. The plaintiff summarizes his complaint as follows:

"That the list from which the trial jury was taken was selected by the city clerk of Pittsburg, Crawford county, Kansas, Leonard Boyd, and not by the mayor; that it was prepared January 26, 1923, instead of in April, 1923; that it was selected from the poll books of the city of Pittsburg instead of from the assessment rolls of Crawford county; that the mayor of Pittsburg, on the 26th day of January, 1923, was O. T. Jones; that he was out of office in April, 1923, and could not legally prepare a list for the said month; that the mayor of Pittsburg in April, 1923, was C. Mart Montee; that he prepared a list of jurors, which he certified to the county clerk on June 1, 1923; that the preponderance of the evidence is to the effect that the list certified by Mayor Mart Montee, June 1, 1923, was the last list received by the county clerk from any source during the year 1923; that the county clerk, in violation of law, put into the jury box the illegal list drawn by the city clerk of Pittsburg, Kansas, and filed on January 26, 1923; that the list drawn by Mayor Mart Montee was received by the county clerk on or about the first week in June, 1923; that the jurors for the November term, division No. 1, were drawn from the jury box by the county clerk on October 18, 1923, four and one-half months after the receipt of the list prepared and certified by

Mayor C. Mart Montee; that the county clerk, in violation of law, failed and refused to put into the jury box the list submitted by the mayor of the city of Pittsburg, Mayor C. Mart Montee; that the facts above set out were unknown to appellant or to his attorneys of record at the time of the trial and at the time of the filing of the motion for new trial herein; that no objection was made by appellant to the array nor to the panel at the time of the trial nor at the time of the filing of his motion for new trial herein; that the above facts were discovered by appellant after the filing of his motion for new trial and while he was investigating and examining the records of the county clerk in connection with his charges relating to jurors as set out in his motion for new trial herein; that objection was made by appellant at the first opportunity after his discovery of the aforesaid irregularity in the selecting and drawing of the jury, by filing an affidavit signed by Sylvan Bruner setting out the above facts; that the jury was illegal and had no existence in law; that appellant presumed that the legally elected and authorized public officials had performed their duties in conformity with the law; that the hearing of the juror, C. E. Joachim, was defective, and that because of this defect he was unable to hear all of the testimony of witnesses given in the case."

Plaintiff argues that the twelve men who tried the case did not constitute a legal jury, could not render a legal verdict, and that he is therefore entitled to a new trial.

The procedure for selecting a jury is set out in section 43-101 *et seq.* of the Revised Statutes and need not be quoted here. The general rule is that irregularities in the selection of a jury are not sufficient grounds for a new trial unless prejudice is shown.

In 1 Thompson on Trials, 2d ed., section 116, it is said:

"Although there is considerable American authority, following in the wake of a leading case in Maryland, in favor of the rule that the discovery that a disqualified person sat on the jury gives to the unsuccessful party the same right of new trial as the right which he would have had to challenge the juror if the discovery had been made before the jury were sworn, on the ground that such a person is no juror at all—a nonjuror—and that the presence of a nonjuror vitiates the whole panel; yet the mass of American authority, grounded upon considerations of convenience and public policy, is opposed to this strict rule. It has been repeatedly held that a cause of challenge not discovered until after verdict, whether the case be civil or criminal—as that some of the jurors were aliens; or not of the jury list as selected by the county authorities; or nonresidents; or not citizens of the county or state; or not possessed of the statutory qualifications, as, for instance, less than twenty-one or more than sixty years of age or related to the opposite party within the disqualifying degrees; or interested in the event of the suit; or shown to have expressed disqualifying opinions as to the subject matter of the trial; or otherwise subject to challenge—is not, *per se*, a ground of new trial, though it may be such in the discretion of the court. In the exercise of such a discretion an essential inquiry will be whether the objecting party exercised reasonable dili-

gence in ascertaining the qualifications of the obnoxious juror. Was he questioned on the *voir dire* as to the cause of challenge now alleged? If not, there has been a lack of diligence on the part of the complaining party which amounts to a waiver of the cause of challenge. Moreover, it should appear by affidavit that both the prisoner and his counsel had no knowledge of the disqualifying fact when the juror was accepted. In England and in many American jurisdictions a paramount inquiry upon such objection is whether it has resulted in an unjust verdict; if not, the objecting party has sustained no injury and a new trial will not be granted in order that public and private time may be consumed, and the dangers of other irregularities incurred, when the same result must, on a just view of the evidence, be reached. Unless there is plain evidence of injustice done to the party complaining, the verdict should be allowed to stand."

The paramount inquiry is whether the plaintiff was prejudiced— whether the verdict was unjust. We are not warranted in reversing the case on account of technical violations of the statute unless prejudice appears. Plaintiff has shown none.

In *Hanson v. Kendt,* 94 Kan. 310, 146 Pac. 1190, exception was taken to the manner in which the jury was drawn by the clerk. The court said:

"How this prejudiced the plaintiff does not appear. Neither does it appear that the jury was not a fair jury, nor that any particular juror was incompetent." (p. 314.)

In *Wood v. McAlpine,* 85 Kan. 657, 118 Pac. 1060, a challenge to the array because the requirements of the statutes had not been complied with was overruled, and the court in sustaining the lower court, while it recognized the requirements of the statute and the fact that they had not been literally complied with, said:

"It was practically a question, therefore, of a choice between a few hundred and a few thousand names of qualified jurors, and no substantial rights of the defendant were invaded by overruling the challenge." (p. 660. See, also, *State v. Jackson,* 27 Kan. 581; *Atchison, T. & S. F. R. Co. v. Davis,* 34 Kan. 199, 8 Pac. 146; *State v. Whisner,* 35 Kan. 271, 10 Pac. 852.)

Plaintiff contends the court erred in refusing a new trial, to which he was entitled because of the defective hearing of one of the jurors. If he is correct, as he asserts, that he carefully examined the jurors on their *voir dire,* he would have discovered any serious defect in the juror's hearing. Plaintiff says that he made such a preliminary examination of the list of jurors submitted to him as is customary; that he questioned them on their *voir dire* with diligence and all due care; that he overlooked nothing that he believed necessary to conserve his rights herein, but he did not delve into the acts of the duly

elected and qualified county officials, having all confidence in their honesty and integrity and in their conscientious observance of the requirements of the law in their official duties; that he was within his right in this presumption and cannot be held to have waived his rights to be tried by a legal jury.

If he did all these things, as he now asserts, he undoubtedly had as fair and conscientious a twelve men as could have been found in Crawford county to try his case. He does not claim that the twelve or any one of them failed fairly and truly to consider and pass upon the issues submitted to them. Without having first shown some prejudice or violation of his substantial rights, he is in no position to complain.

Under the circumstances there was no error in refusal to permit the juror to impeach his verdict, nor was there error in refusal to permit further evidence on the motion for new trial relating to the jury lists in question.

The judgment is affirmed.