No. 36,968

OPAL E. LEE, *Appellee*, v. GAS SERVICE COMPANY, and CLARK
PENNICK, *Appellants*.

(201 P. 2d 1023)

Opinion filed
January 22, 1949.

P. K. Smith, of Wichita, argued the cause, and Robert D. Garver, Ralph
E. Gilchrist, Leroy Warner and Harold Goodwin, all of Wichita, were with
him on the briefs for the appellants.

W. L. Cunningham, of Arkansas City, argued the cause, and E. J. Taggart
J. H. Taggart, both of Wellington, J. T. Boyle, D. Arthur Walker, Wm. E.
Cunningham and William R. Howard, all of Arkansas City, were with him on
the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages for wrongful death resulting from an explosion.

In a much summarized manner it may be said the petition alleged that the defendant company operated a natural gas distributing system in Belle Plaine, Kan., and that defendant Pennick was its manager and superintendent, and that each had certain duties of inspection and maintenance; that the Chapman and the adjoining Goheen buildings were served by specified gas mains and laterals; that some days prior to October 9, 1945, the defendants set a gas meter at the rear of the Chapman building and tested the gas lines, connections and appliances in that building, but did not inspect outside lines; that the south basement wall was of loose construction with many holes through which gas could readily pass; that the company's mains in the alley and leading to the meter were unsafe and any reasonable inspection and test by the defendants would have so disclosed; that such mains leaked and permitted gas to escape in the immediate vicinity, penetrate the loose wall and accumulate in the basement of the Chapman building; that on October ——, 1945, the gas in the basement of the Chapman building exploded and destroyed it and the Goheen building; that a short time before the explosion plaintiff's husband, Harvey D. Lee, had entered the drugstore in the Goheen building as a customer and while there the explosion occurred and he was killed. At length, plaintiff charged that defendants were negligent in maintaining the company's lines in an unsafe condition, in failing to make adequate inspections thereof, in failing to make inspections in the rear of the Chapman building, in installing the meter adjacent to the Chapman building and turning on the gas when in the exercise of reasonable care they would have known gas would escape and pass into the basement of the Chapman building, in installing the meter in that they failed to apply lead or other sealing compound on the joints and connections and did not screw the pipes, joints, connections and appliances together in a proper manner, all of which caused, permitted and allowed natural gas to escape and flow in and under the Chapman building.

For present purposes, it may be said defendant's answer admitted corporate existence and that the company operated in Belle Plaine, admitted the death of Harvey D. Lee, and denied generally.

After a trial lasting eight or nine days, the jury returned a verdict

in favor of plaintiff and against both defendants and answered special questions as follows:

"No. 1, Were the gas mains, service lines, and connections of the Gas Service Company in Belle Plaine, Kansas, in the vicinity of the Chapman Store Building, defective so that gas leaked and escaped therefrom prior to and at the time of the explosion in the Chapman Store Building on October 9, 1945? A. Yes.

"No. 2, If you answer Question No. 1, in the affirmative, then state if said gas so leaking and escaping found its way into the basement of the Chapman store building at the time of and prior to the explosion on October 9, 1945? A. Yes.

"No. 3, If you answer Question No. 2 in the affirmative, then state if this gas which had found its way into the basement of the Chapman store building became ignited so that it exploded on October 9, 1945? A. Yes.

"No. 4, Did the agents and employees of the defendant gas company, after installing the meter and before leaving the premises, turn off the gas so that no gas could enter or pass through the meter? A. Yes.

"No. 5, Do you find that R. E. Chapman thereafter turned on the gas so that it might pass through the meter and enter the Chapman store building lines? A. Yes.

"No. 6, Did the gas which burned or exploded in the Chapman store building in Belle Plaine, Kansas, on October 9, 1945, enter the building through the gas meter and the gas pipes leading therefrom into the building. A. No.

"No. 7, If you find that the gas which exploded in the Chapman store building on October 9, 1945, entered the building in some way other than through the gas meter and the gas pipes leading therefrom into the building, then state:

"(a) How did it enter the building? A. Through the foundation wall.

"(b) Where did it enter the building? A. The south foundation wall below the outside ground level.

"(c) From where did the gas which entered the building in this matter come? A. At the lower end of the riser pipe on exhibit No. 33.

"No. 8, If you find that the explosion in the Chapman store building on October 9, 1945, was due to defendants' negligence, then state, in detail, in what way and manner each of the defendants were negligent? A. Through the negligence of the Gas Service Co. and their employee Clark Pennick in the inspection and maintaining service lines prior to and at the time of setting the meter at the rear of The Chapman Hardware Building just prior to the explosion."

Defendants' motions for judgment notwithstanding the general verdict and for a new trial were denied, and in due time they perfected their appeal to this court, specifying errors which are treated under four general headings in their brief.

At this point we note that in *Chapman v. Gas Service Co.*, 164

Kan. 359, 190 P. 2d 367, this court considered an appeal in another action arising out of the same explosion that is involved in the case at bar. In that opinion may be found a detailed statement of the evidence showing the location of the buildings involved, of gas mains and service pipes, of efforts made to determine the cause of the explosion, and of leaks in the mains, and in substance like the evidence in the instant case and reference is made thereto. It is noted however that in the instant case there was no evidence of leaks remote in time or place such as was condemned in that case.

I

Appellants first contend the trial court erred in not sustaining their motion for judgment on the answers to special questions. They direct our attention to the answers to questions Nos. 7 and 8, citing authority to the effect that where in an action for damages the jury finds a particular ground of negligence it absolves the defendant of all other grounds alleged in the petition (*Jilka v. National Mutual Cas. Co.*, 152 Kan. 537, 106 P. 2d 665; *Shepard v. Thompson*, 153 Kan. 68, 109 P. 2d 126; and *Rasing v. Healzer*, 157 Kan. 516, 142 P. 2d 832) argue that the answers to those two questions absolve them of all other grounds of negligence pleaded, and they then argue that the two answers are unsupported by the evidence, hence, in effect, they have not been found guilty of negligence. The contention cannot be sustained. In *Harshaw v. Kansas City Public Ser. Co.*, 154 Kan. 481, 119 P. 2d 459, the rule stated was recognized and held to be sound and frequently applied but it was followed by this statement:

"But a reviewing court is not required to shut its eyes to other special findings of the jury, and these may and sometimes do amplify and supplement the jury's specific finding of negligence." (1. c. 484.)

This statement is followed by citation of authorities to which reference is made. Neither the parties nor the court may isolate one answer and ignore others, all are to be considered together, and if one interpretation leads to inconsistency and another to harmony with the general verdict, the latter is to be adopted (*Dick's Transfer Co. v. Miller*, 154 Kan. 574, 119 P. 2d 454). Without extended comment, it is clear that the answers to questions Nos. 1, 2 and 3, disclose that the company's mains, service lines and connections in the vicinity of the Chapman building were defective and leaked gas which found its way into the basement of that building and there exploded. The allegations of negligence covered that

phase of the matter. That all of the answers are consistent with each other and with the general verdict is too clear to be disputed.

The contention that the answers to questions Nos. 7 and 8 are not supported by the evidence may not be raised where those answers are relied on to support a motion for judgment *non obstante veredicto*. Such a motion concedes the findings are supported by the evidence (*Sams v. Commercial Standard Ins. Co.*, 157 Kan. 278, syl. ¶ 3, 139 P. 2d 859, and *Long v. Shafer*, 162 Kan. 21, syl. ¶ 1, 174 P. 2d 88, and cases cited). Notwithstanding, we have examined appellants' contention that gas did not come from the lower end of the riser pipe leading to the meter. There was evidence the riser pipe had not been properly screwed into the service line leading from the main in the alley to the Chapman building.

## II

Appellants next contend that the trial court erred in overruling their demurrer to the appellee's evidence and in not sustaining their motion for a directed verdict, which they discuss together. Their contention is that appellee's evidence failed to prove there was any negligence whatever or that the explosion was caused by any gas escaping or leaking from any lines, pipes or appliances under the operation or use of appellants and that were defective at or prior to the time of the explosion. They direct attention to *Kinderknecht v. Hensley*, 160 Kan. 637, 164 P. 2d 105, where it was held that the mere fact an accident occurs and injury results is not sufficient to establish liability and that before a plaintiff can recover he must allege and prove the negligence which was the proximate cause of the injury for which recovery is sought. Although not directly stated, appellants seem to recognize that negligence may be proved by circumstantial evidence, but contend that the circumstances relied on must be of such a nature and so related that the only reasonable conclusion to be drawn therefrom is the one sought to be established, and that a fact is not proved by circumstances which are merely consistent with its existence (*Hendren v. Snyder*, 143 Kan. 34, 53 P. 2d 472; *Crowe v. Moore*, 144 Kan. 794, 62 P. 2d 846; and *Miller v. Gabbert*, 154 Kan. 260, 118 P. 2d 523). The rule contended for is conceded. Appellants analyze appellee's evidence in such manner as to make it appear that the gas which exploded may have been sewer gas, or gas from some unused outside toilets or from refuse from a garage or from decaying vegetable matter. They contend the riser pipe was broken as a result of the explosion and that it

is only a surmise on the part of the jury as to what caused the explosion. In their argument they attempt to explain away evidence that different people smelled gas in the rear of the building; that their manager and superintendent was notified and did nothing; that the riser pipe showed that instead of being screwed firmly into the service line it was only engaged for two or three threads and the remainder of the pipe threads were filled with dirt; that experts in gas detection, using approved methods and apparatus, tested the ground in the rear of the Chapman building and found it permeated with gas, and that tests showed it was natural gas. No purpose will be served by making any further review of the evidence. Both the abstract and counter abstract have been fully examined, and in our opinion the evidence is not such that only a conjecture and not a definite conclusion can be drawn therefrom, nor may it be said to be circumstantial only and that the circumstances are such that different conclusions may be drawn therefrom and therefore appellee may not recover thereunder. Without a specific statement of what the presumptions are, appellants direct attention to cases holding that a presumption cannot be based on another presumption to establish negligence (e. g., *McKenzie v. New York Life Ins. Co.*, 153 Kan. 439, 112 P. 2d 86). We cannot discern where that was done in ruling on the demurrer or the motion for a directed verdict.

### III

Appellants contend their motion for a new trial should have been sustained on four grounds: (a) Misconduct of the prevailing party; (b) erroneous instructions to the jury; (c) improper selection and impaneling of the jury and (d) admission of incompetent evidence, and that the denial of the motion constituted error.

The contention there was misconduct by the prevailing party arose from the following: Appellee had issued a subpoena *duces tecum* for one Mawson, a district manager of the defendant company, to produce charts showing the volume and pressure of the natural gas that entered the company's distribution system in Belle Plaine from September 1 to December 1, 1945. The charts were produced. During appellee's case in chief Mawson was examined at length concerning leakage in the company's lines. On March 3, 1947, the appellee, as part of her rebuttal, called one Roth, an employee of Cities Service Gas Company, and questioned him about the charts and at that time the charts covering from October 1 to October 9, 1945, were missing. Without noting details, the trial

court sustained objections to most of the questions asked for the reasons the evidence sought to be elicited was not proper rebuttal. A little later both parties rested and court was adjourned until March 4, 1947, when the jury was instructed and the cause was argued. The court then adjourned to March 5, 1947, at 9:00 o'clock a.m., at which time appellants asked leave to reopen for the purpose of introducing certain charts, for the reason appellants were charged with having withheld them. During colloquy between court and counsel, it developed that the missing charts had been in the court room during the examination of Roth on the preceding day, and after court had then adjourned had been found on a table that was being used by appellee's counsel. The application was granted and Mawson was called to the stand and the missing charts were identified and admitted in evidence, and the parties rested. The trial court then asked the parties if they desired any additional instructions or wished to make any additional argument and each announced they did not, and the jury then retired to consider its verdict which it returned later in the day. Appellants' motion for a new trial was denied on April 12, 1947. Both parties bring before us affidavits concerning the charts above referred to and explaining why they were not available when Roth was being examined in rebuttal. These affidavits were made long after the motion for a new trial was ruled on, are no part of the record and cannot be considered. While based partially on the above affidavits, the burden of appellants' contention is that in their arguments to the jury appellee's counsel stressed the fact that the charts were absent, and inferred and stated they were withheld because they showed escape of gas; that after the case was reopened and the charts admitted, the cross-examination of Mawson evidenced a continued purpose to keep the jury confused and to continue the claimed misrepresentation.

Appellants admit this whole matter was presented to the trial court on the motion for a new trial but state that that court was "embarrassed" and refused to grant a new trial on the ground there was no showing of prejudice. Remarks made by the trial court in ruling on the motion for a new trial as to other features are included in the abstract, but there is no showing as to what it may have said about the matter being discussed. We note, however, that if appellants are correct in their version, when discovery of the missing charts was made, they made no motion to have a mistrial

declared—they contented themselves by having the case reopened and the charts introduced, and then expressly waived further instructions or argument. And we have no doubt that the whole matter was fully presented to the trial court on the hearing of the motion for a new trial. That court was in a position to determine the full effect of all that occurred and when it denied the motion it must have found that appellants had not been prejudiced. We cannot find error under the circumstances.

We have given careful attention to the appellants' contention that the trial court erred in giving seven instructions to the jury over their objections thereto. Limits of space prevent setting out the instructions and commenting at length on each particular objection. As to two instructions, it is contended that the court's telling the jury that natural gas is a "very dangerous agency" and that the transporters thereof are held to the exercise of "great care" was erroneous and prejudicial. Such terms have been frequently used in our decisions and approved in instructions. See, e. g., Carlisle v. Union Public Ser. Co., 137 Kan. 636, 21 P. 2d 395, and cases cited. Another instruction treating of the company's duty to keep its own lines in good condition and to have a proper system of inspection to discover leaks, was objected to as erroneous because no time element was included. The objection seems to be predicated on an assumption that the only evidence of leaks referred to the riser pipe. There was other evidence of leaks in the vicinity of the Chapman building and most of it referred to times which could hardly be called remote. We think this particular contention cannot be sustained. As to the other instructions complained of, the contention is that there was no evidence upon which they could be based, and our attention is directed to authorities holding that in the absence of any evidence upon which an instruction can be based, such instruction is error. The particular instructions treat of the duty of the company to inspect its lines and facilities, and to make repairs. An examination of the record shows there was evidence on which the instructions were based.

Appellants contend there was an improper selection and impanelling of the jury. The basis for the contention, as stated by appellants, is that in calling jurors for service appellants' counsel noticed that they were not being called in the order in which they were listed in the bar docket and upon their inquiry the clerk informed them that the trial judge had instructed her to place certain

names at the foot of the list, and as a result the jury box was not filled by prospective jurors in the order in which they were drawn; that after *voir dire* examination and the jury had been passed for cause and each party had exhausted its challenges the court conducted an examination of its own and asked whether it would be inconvenient for any to serve and as a result two jurors were excused and others qualified; the trial court then inquired whether it should grant additional challenges and appellee said "no" and appellants said nothing, and that their counsel could not without embarrassment to themselves or their clients object to the court's action. The record does not disclose that appellants made any objection to anything mentioned at the time it occurred. On hearing of the motion for a new trial, the court stated it had no rule as to the order in which names listed are called for jurors, although as a matter of practice the clerk began at the top of the list, but that many times it had instructed the clerk not to call certain names in order but to place them at the foot of the list, and that in so doing it merely attempted to accommodate jurors; that in the case at bar certain jurors had asked to be excused, but that they were not excused but their names were put at the foot of the list; that statements in an affidavit filed by appellants were substantially true; that it had offered counsel the right to additional challenges and considered negative answers as a waiver. Appellants contend that this procedure was fundamentally wrong and unfair and erroneous even though there was no affirmative showing of prejudice. There is no contention whatever that the two jurors last chosen were not competent, unprejudiced jurors, and we fail to see where the jury as a whole was not one composed of competent and impartial jurors. Under *Hanson v. Kendt,* 94 Kan. 310, 146 Pac. 1190; *Murray v. Electric Co.,* 99 Kan. 507, 162 Pac. 1145; and *Burley v. Missouri Pac. Rld. Co.,* 119 Kan. 95, 237 Pac. 903, it was incumbent upon the complaining party to show he was prejudiced, and such a showing is not made here.

Appellants further contend they were entitled to a new trial because of the admission of incompetent, irrelevant and immaterial testimony. The contention turns first on evidence of a leak in a gas main in front of Tab Lane's pool hall which was about 100 feet south of the Chapman building. Evidence of the same type and objection of the same sort concerning the leak in front of the pool hall were considered in *Chapman v. Gas Service Co.,* supra, and the ob-

jections were not sustained. Our attention is also directed to evidence of old and allegedly abandoned mains in the street east of the Goheen building and lines leading to a building immediately south of the Goheen and Chapman buildings, and that after the explosion, an open stop cock was found therein. Appellants' contention is that this evidence had no bearing on the company's liability. With reference to both instances appellants state the evidence as to one might be not prejudicial by itself, but the case being based upon pure supposition, speculation and inference the combination was highly prejudicial. We cannot agree the case is so based and that such a result followed. The evidence complained of was cumulative in character, and while in and of itself was relatively remote as to place, that affected its weight and not its competency. There was no error.

We are of opinion the trial court did not err in its ruling on the motion for a new trial.

IV

Under a heading that the general and special verdicts were based wholly upon supposition, speculation and conjecture and entirely contrary to the evidence, appellants direct attention to *Chapman v. Gas Service Co.*, supra, analyze some of the cases cited therein and argue that the evidence in this case is much more speculative than in the cited case. In a sense the whole argument is somewhat a restatement of their arguments on their demurrer and motion for a directed verdict. Without further statement, we conclude that the verdicts were not based on supposition, speculation or conjecture but are supported by substantial, competent evidence.

V

From what has been said it follows that the judgment of the trial court must be and it is affirmed.