No. 36,903

J. C. LONG and MARY VIRBA LONG, *Appellees*, v. L. T. SHAFER, HERMAN TINDELL and COMMERCIAL STANDARD INSURANCE COMPANY, *Appellants*.

(188 P. 2d 646)

Opinion filed January 24, 1948.

*Wayne Coulson*, of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Paul R. Kitch, Manford Holly* and *Dale M. Stucky*, all of Wichita, were with him on the briefs for the appellants.

*L. J. Bond,* of El Dorado; and *Arnold C. Todd,* of Wichita, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: Plaintiffs brought this action for damages for the death of their daughter, Betty Alice Long, alleged to have resulted from the negligence of the defendants. The case was here before (162 Kan. 21, 174 P. 2d 88), where a judgment for plaintiffs was reversed because of trial errors. Upon another trial the jury answered special questions and returned a general verdict for plaintiffs, upon which a judgment was rendered, and defendants have appealed.

Briefly, the general facts may be stated as follows: The Douglas road in Butler county is a north and south highway paved 18 feet wide. The center line forms the east boundary of the city of El Dorado. A short distance south of the city it is intersected at right angles by a highway, improved with a black top surface, known as Sunset Lawns boulevard, frequently spoken of in the record as "cemetery road." At its juncture with Douglas road there are curves to the south and to the north in the Douglas road, forming the letter "Y," leaving a small triangular area just west of the pavement on Douglas road, graded about level with the pavement but covered with gravel. Soon after four o'clock the evening of December 3, 1943, Betty Alice Long, a sophomore in high school, was riding in the center of the seat of a Chevrolet coupé driven by Jack Clayton Padfield, and to her right was a young man named Marion Wing. They were going south on the right-hand side of Douglas road. About the same time an oil transport truck, owned by the defendant, L. T. Shafer, driven by his agent and employee, Herman Tindell, was traveling north on the east side of Douglas road. When the transport truck reached the curved part of the highway leading into Cemetery road the driver pulled across the west side of Douglas road in front of the coupé in which Betty Alice Long was riding. The driver of the coupé turned to the right and the coupé was struck near its center by the front of the transport truck and Betty Alice Long was killed in the resulting crash. The jury were asked and answered special questions as follows:

"(1) At what distance was the transport truck which Herman Tindell was driving from the center of the intersection of Douglas Road and Sunset Lawns Boulevard when he first saw the Chevrolet Coupe in which Betty Alice Long was riding? A. Approximately 260 feet.

"(2) At what distance from the center of said intersection was the Chevrolet Coupe in which Betty Alice Long was riding when Herman Tindell first saw it? A. Approximately 550 feet.

"(3) At what rate of speed was the Chevrolet Coupe traveling when it was five-hundred feet north of the center of said intersection? A. Approximately 45 miles per hour.

"(4) At what rate of speed was said Chevrolet Coupe traveling at the time it entered said intersection? A. Approximately 45 miles per hour.

"(5) At what rate of speed was the transport truck traveling at the time the defendant Herman Tindell started to turn said transport truck from Douglas Road into Sunset Lawns Boulevard? A. Approximately 11 miles per hour.

"(6) Where was the Chevrolet Coupe in which Betty Alice Long was riding at the time the transport truck commenced its left-hand turn from Douglas Road into Sunset Lawns Boulevard? A. Approximately 140 feet north of point of impact.

"(7) After the defendant Herman Tindell started his left-hand turn, from Douglas Road into Sunset Lawns Boulevard what, if anything, could he have done which was not done to avoid the accident? A. By evidence having observed the coupe coming from the north at an excessive rate of speed, he should have stopped his truck and yielded the right of way to the oncoming car.

"(8) What warning or signal, if any, did Herman Tindell give that he expected to turn from Douglas Road into Sunset Lawns Boulevard? A. From evidence he gave the proper hand signal for a left hand turn.

"(9) If you find the defendant Herman Tindell did give a signal or warning before starting to make said turn, at what distance from said intersection was said signal or warning given? A. Approximately from evidence, 200 feet south of center line of intersection.

"(10) How fast was said transport truck traveling at the time of the collision or impact? A. Approximately, from evidence, 11 miles per hour.

"(11) Do you find that the defendant Herman Tindell was guilty of negligence? A. Yes.

"(12) If your answer to Question No. 11 is in the affirmative, state of what such negligence consisted. A. By not stopping his truck or yielding the right of way to the approaching vehicle.

"(13) What, if anything, prevented Betty Alice Long from seeing the defendant's truck as it started its lefthand turn? A. By evidence presented, nothing.

"(14) Do you find that Betty Alice Long was guilty of negligence? A. No.

"(15) If your answer to Question No. 14 is in the affirmative, state of what such negligence consisted. A. ———

"(16) If your verdict is for the plaintiffs, then list the various items of damages which you allow. A. $788.16—Funeral Expenses, $5,000.00—Damages."

Appellants first contend that they are entitled to judgment notwithstanding the verdict because of the contributory negligence of Betty Alice Long. In the former appeal this question was held to

be one for the jury. In this case the jury specifically found that she was not negligent. Counsel for appellants argue, however, that the undisputed facts show that she was negligent in that she did not take due care for her own safety. We have examined the evidence abstracted and considered all of the arguments and authorities cited in appellants' brief on this point and are unable to find anything in the record which compels such a finding. It must be remembered that in view of her death the presumption is that she took due care for her own safety. The burden was upon defendants to prove her negligence. About all they have is that after the occupants of the coupé could have seen that defendant's truck was turning across their portion of the highway Marion Wing did not hear Betty Alice Long caution Jack Padfield about the danger of the situation. We think that is entirely inadequate upon which to base a finding of her negligence as a matter of law.

It is contended the court erred in not giving some of the special questions requested by defendants. Defendants requested thirteen special questions. The court submitted sixteen questions to the jury, which included eight of those requested by defendants. The questions requested and not given were: "What, if anything, prevented Betty Alice Long from seeing the signal?" There was no contention that anything prevented her from seeing it. The request was fairly covered by question 13 submitted and the answer thereto. "What, if anything, did Betty Alice Long do to avoid the collision?" It is not contended that there was any evidence before the jury that would have enabled them to answer that question. It is, of course, futile to submit questions which cannot be answered from the evidence. "What was the proximate cause of the collision?" This calls for a conclusion as distinct from a finding of fact. The facts which show the proximate cause of the collision were found by the jury in its answers to questions 7 and 12, which were submitted. "What, if anything, prevented the driver of the Chevrolet from stopping or turning aside prior to the impact?" The evidence clearly showed that he did turn to his right in an effort to avoid the collision. It must be remembered that when defendant turned his truck to the left the entire width of the Douglas road was blocked. "Was the speed of the Chevrolet reduced at any time prior to the impact?" The answers to questions 3 and 4 indicate that it was not. Considering the questions submitted and the answers thereto we think it was not error for the court to refuse to submit these specific questions.

Complaint is made of the court's refusal to give certain requested instructions. Defendants requested an instruction which embodied a part of G. S. 1945 Supp. 8-532, which includes subdivisions (a), (b), (2) and (c). In instruction No. 15 the court gave the following excerpts from the then existing statute (G. S. 1943 Supp., subdiv. [a], § 8-532; subdivis. [a] and [b] of § 8-547, and the first part of § 8-549, including [1].) At the time this instruction was given an objection was made to it because it had omitted some subdivisions of G. S. 1945 Supp. 8-532. The complaint now made is that the court omitted from its instructions that part of the last quoted statute which fixed a maximum speed of "all vehicles" upon the highway at "thirty miles per hour in any residence district." No issue had been framed in the pleadings as to whether the collision in question took place in a residence district. Beginning about 300 feet north of the intersection there were houses for a distance of 800 or 900 feet. There were also houses on the east side of the street north of the intersection. We do not regard this as sufficient for this court to say that the collision occurred in a residential district. Certainly, if defendants desired to make an issue of that matter they should have done so in their pleadings, or at least should have called the court's attention to instruction 15 and requested that the matter be inserted therein. The jury found the Chevrolet coupé was traveling at forty-five miles per hour. We think the speed of the Chevrolet had but little bearing upon the question of liability in this case. Counting back from the point of collision the Chevrolet, if traveling only thirty miles per hour, would have been closer to defendant's truck when it started to turn across the highway than it was at the speed found by the jury.

Some complaint is also made of the court's instructions on the measure of damages if the verdict should be for plaintiffs. We have examined this and find no material error in the instruction as given.

Defendants requested the court to require the jury to make a more definite answer to question No. 16. The point is not well taken. We find nothing in the evidence from which the jury could have found more details than were given in the answer.

The court instructed the jury in substance that the plaintiffs were the parents of Betty Alice Long and her only heirs at law and next of kin, and that they were authorized to maintain this action. In their petition plaintiffs had alleged those facts and at the trial they testified that they were the parents of Betty Alice Long; that she

was sixteen years and ten months of age at the time of her death; that she was single; that she died intestate, and that no administrator had been appointed upon her estate. There was no contradictory evidence. It is now argued there was no evidence that Betty Alice Long had never been married, or specifically, that she died without issue. We think the point is not well taken.

A contention is also made that the verdict is excessive. We have examined all counsel have to say upon that point and find no reason to disturb the amount of the verdict.

We find no error in the record. The judgment of the court below is affirmed.

BURCH, J., not participating.