No. 37,944

Mrs. Minnie Hultberg, (Evart Mills, Administrator of the Estate of Minnie Hultberg, Deceased), *Appellee* and *Cross-Appellant*, v. Ruth Phillippi, *Appellant* and *Cross-Appellee*. Iowa Home Mutual Casualty Company, *Garnishee*.

(220 P. 2d 208)

Opinion filed July 8, 1950.

*L. H. Ruppenthal,* of McPherson, argued the cause, and was on the briefs for appellant and cross-appellee.

*Evart Mills,* of McPherson, argued the cause, and was on the briefs for appellee and cross-appellant.

The opinion of the court was delivered by

Price, J.: This was an action for damages for personal injuries sustained by plaintiff when she was struck by an automobile driven by defendant, and is the second appearance of the case before this court. When the case was first tried the lower court sustained a

demurrer to plaintiff's evidence and on appeal we reversed and remanded the cause for a new trial (*Hultberg v. Phillippi*, 167 Kan. 521, 206 P. 2d 1057).

On the second trial the jury answered special questions and returned a general verdict for plaintiff, and defendant's appeal is the case now before us. While this appeal was pending the plaintiff died and the cause has beeen revived in the name of her personal representative. For convenience, the parties will be referred to as plaintiff and defendant.

The evidence of the plaintiff on the second trial was substantially identical to that introduced on the first trial and in the interest of brevity the detailed summary of such evidence contained in our opinion on the first appeal is by reference incorporated herein.

The defendant testified that on the evening of the accident she had been out north of town to an outdoor movie and as she was driving back through town, south on Main Street, about nine o'clock, she heard something "collide with the car"; that she didn't stop immediately, but when she "saw something laying in the back on the street" she then knew that something had hit her car and she then stopped and went into the American Legion building and called the police. She further testified that it had been raining a little and the pavement was rather damp; that her car was in excellent mechanical condition; that there was no traffic on her (west) side of the street immediately in front of her, and that she did not learn the identity of the injured party until the next morning.

A Mrs. Cipra, defendant's grandmother, was riding in the front seat with defendant and she testified that a large truck and other cars were parked on the west side of the street at about the point of the accident. Her testimony was rather confusing, but the substance of it was that she did not see plaintiff until the latter was "just in front of car," and her version was that plaintiff had walked into the street between the truck and a car parked on the west side. Some of her answers indicated she thought plaintiff "walked into the car."

The theory of the plaintiff, as disclosed by her evidence heretofore referred to, was that while attempting to cross the street from east to west she was hit and run down by defendant's car while it was being negligently driven on the east or left side of the center line of the street. Defendant's theory was that plaintiff was hit immediately after stepping out from between cars parked on the west side of the street.

The jury returned a verdict in favor of plaintiff in the amount of $3,325.98, made up of the following:

"Medical, Hospital, Nursing & Ambulance expense prior to Sept. 17,
1948 (Filing date of petition).................................. $1308.17
"Further future medical, nursing or hospital care................. 1017.81
"Pain and suffering and permanent disabilities.................... 1000.00

$3325.98"

In addition thereto the jury answered special questions as follows:

"1. Immediately before and at the time of the accident, were the headlights on the front of defendant's auto lighted, and in plain view?
"Answer: Yes.

"2. Did parked cars or trucks prevent Mrs. Phillippi from seeing the plaintiff before the accident occurred?
"Answer: No.

"3. Did the plaintiff step from between parked cars at the west curb into the path of defendant's car?
"Answer: No.

"4. If you answer Queestion 3 'No', state how the plaintiff got into the path of defendant's car.
"Answer: Crossing the street.

"5. Did Mrs. Hultberg attempt to cross the street between intersections and fail to yield the right-of-way to Mrs. Phillippi's auto?
"Answer: No.

"6. Could Mrs. Phillipi have seen Mrs. Hultberg in time to have avoided the accident?
"Answer: Yes.

"7. Did Mrs. Hultberg, by her own negligence, contribute to her injury?
"Answer: Yes.

"8. Did Mrs. Phillippi drive her car on the left of the center stripe on Main Street?
"Answer: Yes.

"9. If you answer Question 8 'Yes', was the right (west) side of the street open for traffic at that time?
"Answer: Yes."

Defendant's motions to set aside the answers to questions 5, 6, 8 and 9, as being not supported by the evidence, to set aside the verdict and to enter judgment for defendant on the answers, and for a new trial were overruled—hence this appeal.

One of defendant's specifications of error is that the court erred in overruling her demurrer to plaintiff's evidence. This point was before us on the former appeal and what was there said can well apply to the question as now raised.

Defendant also alleges error in the introduction of the report made to the police department the next morning and it is contended

that our former decision held this report to be incompetent and inadmissible. We think that defendant misconstrues what was there said with respect to the matter. It is to be kept in mind that the question in the former appeal was the correctness of the order sustaining the demurrer to plaintiff's evidence, which included this police department report. Defendant was relying solely on our decision in *Goodloe v. Jo-Mar Dairies Co.*, 163 Kan. 611, 185 P. 2d 158, where the plaintiff went out between two parked cars across the center line of the street and into the side of a truck and sustained injuries. In our former decision in the case at hand we held that the Goodloe case was not in point and that defendant's statement in her report to the police that the plaintiff came out into the street between two parked cars could be nothing more than her conclusion in view of her further statement that she never saw plaintiff, from which it clearly appeared that she did not know whether plaintiff came from behind parked cars on the west side of the street or from the east side where there were no parked cars. We think that the police report was admissible and competent for whatever it was worth, not as being a part of the *res gestae* but as a statement in the nature of an admission against interest.

Defendant next complains of the admission in evidence of a so-called motor vehicle speed chart which showed distances required to stop a car at different speeds. Undoubtedly the theory of the court in admitting this chart was that it was competent on account of the distance traveled by defendant's car after she heard something "collide with the car" before being brought to a stop. In view of defendant's own testimony in this respect we cannot say such evidence was inadmissible and incompetent.

It is strenuously argued that the court erred in instructing the jury on the doctrine of last clear chance for the reason that all of the elements of the doctrine were not stated in the instruction, and for the further reason that under the evidence the doctrine had no application to the case. Defendant objected to the instruction at the time it was given. We have examined this instruction and find defendant's first criticism of it to be without substantial merit. While the question whether it should have been given may be debatable, yet in view of the contentions of the parties contained in the petition and answer and the evidence introduced on both sides, we cannot say that the giving of such instruction was prejudicial error. Furthermore, the answers to special questions indicate clearly that the jury was in no way confused by the instruction, and

on the whole record we are unable to say that it affirmatively appears the instruction complained of prejudicially affected the defendant's substantial rights. (G. S. 1935, 60-3317.)

And finally, defendant argues that in view of the jury's answer to question number 7 plaintiff is barred from recovery and that the general verdict should be set aside and judgment rendered for defendant. This question and answer were:

"7. Did Mrs. Hultberg, by her own negligence, contribute to her injury?
"Answer: Yes."

At the time the jury returned its verdict and the answers to the special questions plaintiff moved the court for an order to require the jury to make further answer to this question by specifying Mrs. Hultberg's alleged negligent acts. The defendant objected and the court sustained the objection.

It is of course elementary that negligence on the part of a plaintiff which contributes as a proximate cause to the injury complained of bars recovery. Answers to special questions are to be harmonized with each other and with the general verdict if possible. Defendant contends that the answer to question number 7 definitely settles the question of plaintiff's contributory negligence and bars recovery. We cannot agree. In the first place, the question calls for the conclusion of the jury as a matter of law rather than a finding on a specific question of fact. It is definitely general in character and is purely in the nature of a conclusion. Such general finding or conclusion, if contradicted by detailed findings, cannot prevail, but is controlled by and must yield to the special or detailed findings of ultimate facts. (*Harrison v. Travelers Mutual Cas. Co.*, 156 Kan. 492, 134 P. 2d 681.)

Secondly, we think the answers to other questions as to specific facts absolve plaintiff of contributory negligence, despite the answer to question number 7, which we have already said is nothing more than a conclusion. By their answers to questions 2, 3 and 4 the jury specifically found that parked cars or trucks did not prevent defendant from seeing the plaintiff before the accident; that plaintiff did not step from between parked cars at the west curb into the path of defendant's car, and that plaintiff was hit while crossing the street. In its answer to questions 5 and 6 the jury found that plaintiff in attempting to cross the street did not fail to yield the right of way to defendant's car and that defendant could have seen plaintiff in time to avoid the accident. In its answers to questions

8 and 9 the jury specifically found that defendant was driving her car on the left side of the street, despite the fact that the right side was open for traffic at the time and place in question. No traffic signals were in operation and in such a case a pedestrian is not prohibited from crossing a street other than within a marked crosswalk, provided such pedestrian yield the right of way to all vehicles upon the roadway. (G. S. 1947 Supp. 8-557.) The jury specifically found that plaintiff did not fail to yield the right of way to defendant's automobile, and from the location of her body there was ample evidence to support the finding that defendant was driving on the left side of the center line of the street.

We think the jury's findings as to specific facts clearly establish negligence on the part of defendant and absolve plaintiff of any contributory negligence which would bar her recovery, and under the rule the conclusion contained in answer 7 must yield to the detailed findings of such specific facts. (*Leonard v. Kansas City Public Ser. Co.*, 167 Kan. 51 [p. 60], 204 P. 2d 760.)

This is primarily a fact case. No complaint is made as to the amount of the verdict and from an examination of the whole record it is clear that the findings of the jury are supported by substantial, competent evidence and that no prejudicial error appears. The judgment of the lower court on the principal appeal is therefore affirmed.

We now take up briefly the matter of plaintiff's cross-appeal. The verdict in this case was rendered on October 12, 1949, and following the denial of defendant's post-trial motions judgment on the verdict was entered by the court on October 29, 1949. On November 15, 1949, execution was issued against the defendant for the amount of $62.49, such amount being the costs adjudged against defendant in the prior appeal to this court, and for the further sum of $3,325.98, being the amount of the judgment in the second trial. This execution was returned by the sheriff unsatisfied. Plaintiff then, on the same day, November 15, 1949, filed her affidavit for garnishment, naming defendant's insurance carrier, Iowa Home Mutual Casualty Company, as garnishee. On December 2, 1949, the garnishee answered, denying that it was in any manner indebted to or under liability to defendant.

". . . excepting a policy of insurance with the defendant to pay certain sums which the insured may become legally obligated to pay as damages herein but that no action shall lie on said contract against the said garnishee unless and until said sum shall have been determined by final judgment; and that this answering garnishee is in no manner liable as garnishee in this action."

Plaintiff moved for judgment against the garnishee upon the pleadings and at this hearing defendant, by and through her counsel, served notice of appeal from the judgment rendered by the court on the verdict returned by the jury. The court, upon consideration of the pleadings filed and of the service of notice of appeal, held the garnishee not liable and entered an order discharging it. From such order plaintiff filed her cross-appeal, assigning as error the order of the court discharging the garnishee.

The record before us does not disclose whether the insurance policy in question is one of liability or indemnity, but, be that as it may, in view of our affirmance of the judgment in this case we do not consider it necessary to go into the merits of the cross-appeal or to express any opinion concerning the ultimate liability of defendant's insurer. The cross-appeal is therefore dismissed.