No. 43,177

WALTER HENDERSON, *Appellant,* v. KANSAS POWER & LIGHT COM-PANY, a Corporation, *Appellee.*

(380 P. 2d 443)

Opinion filed April 6, 1963. ▇▇▇▇▇

*Elwaine F. Pomeroy,* of Topeka, argued the cause, and *Wendell L. Garlinghouse, Warren W. Shaw, William Hergenreter* and *Carl Quarnstrom,* of Topeka, were with him on the briefs for appellant.

*Robert E. Russell,* of Topeka, argued the cause, and *Harry W. Colmery* and *Lawrence D. Munns,* of Topeka, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action for damages for personal injuries sustained by plaintiff who was burned by electrical shock and severely and permanently injured on September 26, 1954, when a television mast which he was helping install came in contact with the defendant's 33,000 volt three-phase uninsulated transmission line.

This is the fourth appearance of this case. The first appeal concerned the sufficiency of plaintiff's petition and whether it disclosed plaintiff's contributory negligence as a matter of law. It was held that it did not, and the district court's judgment overruling the demurrer was affirmed. (*Henderson v. Kansas Power & Light Co.,* 181 Kan. 625, 313 P. 2d 257.) The case proceeded to trial to a jury and at the conclusion of plaintiff's evidence the defendant's demurrer thereto was sustained, which was reversed by this court and the cause was remanded for a new trial. (*Henderson v. Kansas Power & Light Co.,* 184 Kan. 691, 339 P. 2d 702.) The case was retried to a jury which returned a general verdict in favor of the plaintiff in the sum of $5,000, and made special findings, one of which was that the plaintiff was not guilty of negligence that contributed to his injuries. The plaintiff appealed from that judgment on the ground that the verdict was so grossly inadequate as to compel the granting of a new trial. That question was considered in the third appeal (*Henderson v. Kansas Power & Light Co.,* 188 Kan. 283, 362 P. 2d 60), and a new trial was granted generally as to all issues raised by the plaintiff's amended petition and the defendant's amended answer.

This appeal arises out of a third jury trial which resulted in a verdict for the plaintiff in the amount of $5,000, a verdict in exactly the same amount as was awarded by the jury in the preceding

trial. However, one substantial difference in the verdict in this trial was the answers to special questions. Five special questions were submitted and those questions and the jury's answers thereto are as follows:

"1. Do you find the defendant company guilty of any negligence which proximately caused the injuries of plaintiff?

"A. Yes.

"If you answer this question in the negative, you need not answer any of the remaining questions.

"2. If you answer No. 1 in the affirmative, state of what such negligence consisted.

"A. They were negligent by putting their lines over private property and for not posting signs.

"3. Do you find that the plaintiff was guilty of any negligence which contributed to his injuries?

"A. Yes.

"4. If your answer to the foregoing is in the affirmative, state of what such negligence consisted.

"A. He was negligent for not exercising ordinary care for his own safety.

"5. Do you find that a proximate cause of the accident was the negligence of parties other than plaintiff or defendant in this case?

"A. They were negligent for not exercising ordinary care for their own safety."

Immediately after the jury returned its verdict and answers to special questions, the following colloquy occurred:

"THE COURT: Gentlemen, are there any other matters to be taken up? If there are will you approach the bench first?

"MR. RUSSELL: Not right at the moment, if Your Honor please.

"THE COURT: Before we dismiss the jury?

"MR. RUSSELL: No.

"MR. GARLINGHOUSE: No, Your Honor.

"MR. RUSSELL: No.

"THE COURT: No matters to be taken up before I dismiss this jury?

"MR. RUSSELL: No."

After the court accepted the verdict and discharged the jury, the defendant filed two motions; the first was for judgment notwithstanding the general verdict, "for the . . . reason that the answers to the special questions show that the defendant is entitled to judgment," and the second was for a directed verdict "based upon the the jury's answers to the special questions and in particulars the answers to Nos. 3 and 4." The plaintiff filed a motion for a new trial generally, a motion for a new trial limited to the question of damages only, and a motion to set aside answers to

special questions Nos. 3, 4 and 5 for the following reasons: (1) that they were "mere conclusions of law by the jury rather than any findings of fact"; (2) that they were "definitely general in character and purely in the nature of conclusions only"; (3) that they were "surplusage and are mere conclusions of law"; (4) that they were "inconsistent with the general verdict, and being mere conclusions of law do not affect the general verdict," and (5) that they were "unsupported by the evidence and are contrary to the evidence."

The various motions of the parties were briefed and argued, and the court, in a memorandum opinion, concluded that the jury's special findings were inconsistent with the general verdict and not inconsistent with each other and therefore controlled the judgment, and it sustained the defendant's motion for judgment notwithstanding the general verdict. All other post-trial motions were overruled.

Despite the fact that the amended petition was quoted and summarized in the first appeal, it is deemed essential at this juncture that a brief reference be made to the pleadings of the parties to illuminate the issues presented to the jury. The amended petition alleged that plaintiff's injuries were caused by defendant's negligence in (1) maintaining high tension electrical wires over private property without the permission of and without obtaining an easement from the owner, thereby creating a highly dangerous hazard; (2) erecting and maintaining the power line in a residential area without insulating the electric wires; (3) maintaining the power line without posting warning signs as to its nature and extreme danger, and (4) erecting and maintaining the power line at a height insufficient to avoid contact with a radio or television antenna.

The defendant's answer denied the pertinent allegations of plaintiff's amended petition and alleged as one of its defenses, the following:

"5. That the negligent acts of the said plaintiff, Walter Henderson, and the others who were working with him at the time and place hereinabove described, were as follows:

"A. Failure to use ordinary prudence *and exercise ordinary care* or to take any precaution *for his own safety* under the obvious circumstances and conditions that existed at the time of the accident, as above set forth, which conditions he either saw or knew, *or by the exercise of ordinary care for his own safety* could have seen and known." (Emphasis supplied.)

Six other grounds of contributory negligence were alleged.

We are advised that after the defendant filed its amended answer, the plaintiff filed a motion to make definite and certain and to strike. Nowhere in the motion did plaintiff attack the defendant's allegations of contributory negligence and at no time during the trial did the plaintiff contend that this allegation of specific contributory negligence was improper.

We also note that the court in instructing the jury upon the respective claims of the parties, read to the jury substantially verbatim the above quoted allegation of defendant's amended answer, and it instructed the jury in part as follows:

"INSTRUCTION 2.

"You will observe in this case that the plaintiff is asking for judgment against the defendant on account of alleged negligence of the defendant, and you will also observe that the defense of contributory negligence is made by the defendant against the plaintiff. These claims of the parties make it necessary for the court to define to you what negligence is. *'Negligence' is the want of ordinary care;* that is, the care which an ordinarily prudent person would exercise under the same or similar circumstances. Negligence may consist of acts of commission or acts of omission. When a person does what an ordinarily prudent person would not be expected to do under the circumstances of the situation, he is said to be negligent; *and when a person fails to do what an ordinarily prudent person would be expected to do under the circumstances of a situation, he is said to be negligent."* (Emphasis supplied.)

"INSTRUCTION 4.

·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

"If you find from a preponderance of the evidence in this case *that plaintiff was guilty of negligence in any of the respects alleged in the defendant company's answer, and that such negligence contributed to plaintiff's injury,* then your verdict should be for the defendant company." (Emphasis supplied.)

·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

"INSTRUCTION 8.

"An individual in the position of the plaintiff, although not necessarily bound to know the amount of electricity traveling through high-voltage lines, *is required to exercise at least ordinary care for his own safety* in proximity to electricity, and in all situations he is required to exercise the care that an ordinary prudent person would exercise under like circumstances and conditions. *If he fails to do this, he is said to be negligent. If you find that the plaintiff was thus negligent, or contributorily negligent* in the case at hand, he cannot recover.  .  .  ." (Emphasis supplied.)

"INSTRUCTION 22.

"You will be required to answer a number of special questions and return them into court with your general verdict. These questions you are to answer truthfully according to the evidence produced before you. *You are not required to answer each question 'Yes' or 'No', but your answer when made*

*should be a full and complete response to the specific question asked."*
(Emphasis supplied.)

We are also advised the plaintiff did not object to the above instructions.

Plaintiff's evidence was summarized in the second appeal (*Henderson v. Kansas Power & Light Co.*, 184 Kan. 691, 339 P. 2d 702), and due to the nature of questions here presented it is unnecessary to reiterate all the evidence, and we briefly summarize that which is pertinent.

At the outset, it may be stated the evidence was undisputed that defendant maintained its 33,000 volt three-phase uninsulated transmission line in the alley adjacent to the Joe Redman residence and that the two north wires directly overhung the south portion of the roof encroaching upon the Redman residence 1.2 feet with the lower wire being 16.1 feet above the highest part of the roof. The defendant makes no claim that it was not negligent in maintaining its transmission line over private property and in failing to post signs warning of the nature and extreme danger of the line.

The evidence disclosed that on Saturday, September 25, 1954, the plaintiff assisted his brother-in-law, Herschel Starling, in installing a television antenna at the rear of the Redman residence at a point 9.6 feet from the south or alley side of the house. The full height of the antenna when installed upon a small platform was 39 feet 8 inches above the ground, and an antenna mast with horizontal arms extended 44 inches was fastened to the pole. Three guy wires were attached to a guide ring on the antenna pole near the bottom of the top section and they were fastened by the plaintiff to the roof and to a shed. The antenna pole was fastened by a "roof clamp or saddle" with set screws to prevent it from turning, and was attached to the cornice of the house with an eyebolt. The installation was completed successfully without incident.

On the following morning, Sunday, September 26, 1954, plaintiff and Starling stopped to see how Redman's television was operating, and plaintiff, Starling and Redman went to the rear of the house to turn the antenna "into the channel more" to get a better reception from the Kansas City stations. Starling loosened the set-screws and attempted to turn the antenna pole but could not do so. The plaintiff and Redman were standing about six or seven feet away at the time and he asked them to help him. The antenna pole was not leaning in either direction and the guy wires were not

loose. When they walked up to take hold of the pole to help turn it "there was a terrible explosion" and plaintiff was knocked unconscious. Starling and Redman were killed by electrocution, and plaintiff sustained electrical shock and burns resulting in permanent partial disability. The very serious injuries and the horrible and dreadful permanent disfigurement sustained by plaintiff and the excruciating physical pain and mental anguish which he underwent, the period of his hospitalization, the many blood transfusions, the number of general anesthetics, and the debriding and skin grafting which he was caused to endure are set forth in their opinion of this court (*Henderson v. Kansas Power & Light Co.*, 188 Kan. 283, 362 P. 2d 60), and it is unecessary to here reiterate them.

The plaintiff testified he had never been to the Redman premises prior to September 25, 1954, and on that date he worked on the roof of the house and attached two guy wires to the roof; that he just "casually noticed" the power line and knew they were electric wires, but they did not particularly attract his attention, they were "only wires on poles." He also testified he did not know they overhung the top of the house but assumed they were in the alley where they were supposed to be.

Had it not been for the jury's answers to special questions Nos. 3 and 4, the case would be in the same posture it was after the last trial, and this court would be compelled to grant a new trial. (*Henderson v. Kansas Power & Light Co.*, 188 Kan. 283, 362 P. 2d 60.) In seeking reversal, the plaintiff attacks the answers to special questions Nos. 3, 4 and 5 and briefs and argues two points: (1) that his motion to set aside the answers to special questions should have been sustained, and (2) that the court erred in refusing plaintiff a new trial limited to the question of damages only. No point is made, nor is it argued, that the jury's finding of contributory negligence on the part of plaintiff was not a proximate cause of his injuries. Instead, it is contended only that the answers to special questions Nos. 1 and 2 finding the defendant guilty of negligence which proximately caused plaintiff's injuries state specific facts and not mere conclusions of law; that on the other hand, all of the answers to special questions tending to indicate contributory negligence on the part of the plaintiff state no facts, are definitely general in character and purely conclusions of law, and should have been stricken; that this leaves the special questions favorable to the plaintiff as being proper and they were

correctly sustained, while those pertaining to whether plaintiff was guilty of contributory negligence are conclusions of law and should have been stricken, thereby leaving all the legitimate and proper answers to special questions consistent with the general verdict; consequently, the court's ruling sustaining the defendant's motion for judgment notwithstanding the general verdict was error and should be set aside and a new trial awarded the plaintiff limited to damages only.

The plaintiff directs our attention to *Leonard v. Kansas City Public Ser. Co.*, 167 Kan. 51, 204 P. 2d 760, and *Hultberg v. Phillippi*, 169 Kan. 610, 220 P. 2d 208, and vigorously argues that a mere "yes" answer to special question No. 3: "Do you find that the plaintiff was guilty of any negligence which contributed to his injuries?" did not state a fact, which is more dramatically shown when the answer to question No. 4 is considered finding the plaintiff "was negligent for not exercising ordinary care for his own safety." It is contended that the answer to special question No. 4 which asked the jury to state "of what such negligence consisted," merely gave a legal definition of "negligence" which was obviously a mere conclusion of law and not a statement of fact as is required, and that the answers to special questions Nos. 4 and 5 state a legal conclusion of what negligence consists, and the jury's "definition" could hardly be improved upon even if it had copied the definition of "negligence" from the law books.

We think the decisions cited and relied upon are not helpful to the plaintiff. It is true that simple "yes" and "no" answers to questions such as "Did the plaintiff by her own negligence contribute to her injury?" (*Hultberg v. Phillippi,* supra), and "Do you find from the evidence that the defendant was guilty of negligence that was a proximate cause of the (accident)?" (*Leonard v. Kansas City Public Ser. Co.*, supra), have been held to be general in character and in the nature of conclusions. However, where such general questions are submitted to the jury along with specific questions and the jury makes findings in answers to both the general and specific questions it can be seen that the general findings are mere conclusions drawn by the jury from the facts found and stated in the answers to the specific questions and the general findings may then be ignored and disregarded when they contradict the specific findings.

In the cases cited by the plaintiff, and in others (*Koster v. Mat-*

*son,* 139 Kan. 124, 30 P. 2d 107; *Harrison v. Travelers Mutual Cas. Co.,* 156 Kan. 492, 134 P. 2d 681; *Long v. Shafer,* 164 Kan. 211, 188 P. 2d 646), the jury made specific or detailed findings which contradicted the general findings or conclusions and the rule was applied that such general findings or conclusions, if contradicted by specific or detailed findings, cannot prevail, but are controlled by and must yield to the specific or detailed findings. See, also, *Scott v. Bennett,* 181 Kan. 410, 414, 312 P. 2d 224, and cases cited. But, there is no room for the holdings of those cases to apply here. In the instant case there were no specific or detailed findings which tended to show that the plaintiff was not guilty of negligence which contributed to his injury or negate the effect of the general finding "yes" to special question No. 3 as applied and explained by the jury in its answer to special question No. 4. Hence, the court did not err in refusing to strike the answer to special questions based upon the foregoing authorities.

This brings us to whether the answers to special questions Nos. 3 and 4 state no facts, are definitely general in character and purely conclusions of law and should have been stricken. Whether the plaintiff was guilty of contributory negligence was a question of fact properly submitted to the jury, and our consideration of this appeal is based solely upon its answers to special questions. While no specific or detailed findings of fact concerning the plaintiff's contributory negligence were made it must be conceded that the answer to special question No. 3 is as general in character and as much of a conclusion as the jury's answers were in the Leonard and Hultberg cases, *supra;* likewise, the answer to special question No. 4 was a conclusion, but when those two answers are considered together they state a fact about as well as could be expected of the jury and the purport was that the plaintiff was "guilty of negligence which contributed to his injuries" and that "he was negligent for not exercising ordinary care for his own safety."

Contributory negligence is conduct which involves an undue risk of harm to the person who sustains it (Restatement of the Law, Torts, Negligence, § 463*b*), and was defined in *Cruse v. Dole,* 155 Kan. 292, 124 P. 2d 470, as follows:

"Contributory negligence is conduct on the part of a plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, co-operating with the negligence of the defendant, in bringing about the plaintiff's harm. It is conduct which falls

short of the standard to which a reasonable man should conform in order to protect himself from harm." (Syl. ¶ 1.)

We cannot say that the answers to special questions Nos. 3, 4 and 5 are conclusions of law only. In *Taylor v. Johnson*, 186 Kan. 561, 352 P. 2d 436, it was said:

"Suppose in a case in which the facts are disputed and the jury is asked the one simple question: Was the plaintiff contributorily negligent? And, further, suppose the jury answers, "yes." We know of no case holding that the answer constitutes a question of law or that it could be set aside by the court, if supported by the evidence. . . ." (l. c. 536.)

All findings are necessarily mere conclusions or inferences drawn from the evidence; that is drawn from other facts. It is therefore not a valid objection to a finding that it is a finding of a compound fact, or a complex fact, or a comprehensive fact, and including many minor and subordinate facts; or that it is a conclusion or an inference from the evidence or from other facts, but all findings must necessarily be subject to these same objections. (*A. T. & S. F. Rld. Co. v. Plunkett, Adm'r.*, 25 Kan. 188, 197.) The findings here, through general in nature, are conclusions of fact of a complex character, drawn from a variety of other facts more simple and less complicated in their nature. (*Prescott v. Leonard*, 32 Kan. 142, 145, 4 Pac. 173.) In *K. P. Rly. Co. v. Salmon*, 14 Kan. 512, 527, it was said:

". . . It is not an uncommon thing for adverse counsel to characterize a broad and comprehensive statement of a fact, or perhaps what might more properly be termed a simple but comprehensive statement of a compound fact, as a conclusion from facts, a conclusion of law, or a conclusion from facts and of law, forgetting of course that every fact that comes within our comprehension, however simple and diminutive it may be, must be composed of a vast number of other facts more simple and more diminutive. . . ."

When the answers to special questions Nos. 3 and 4 are considered together they are substantially a finding of the affirmative fact that the plaintiff during the whole transaction was negligent in failing to exercise due care and diligence to protect himself from injury and that such negligence was a contributing cause, co-operating with the negligence of the defendant, to produce his injuries. In other words, the answers are the jury's finding that the plaintiff's conduct fell below the standard to which he should have conformed for his own protection, that is, "he was negligent for not exercising ordinary care for his own safety," and that such negligence "contributed to his injuries."

This conclusion draws support from the fact that the answer to special question No. 4 contains identical language pleaded in subparagraph A, paragraph 5, of the amended answer alleging plaintiff's contributory negligence. The court instructed the jury on the definition of negligence and contributory negligence and further stated that if it found "that plaintiff was guilty of negligence in any of the respects alleged in the defendant company's answer and that such negligence contributed to plaintiff's injury" then the plaintiff could not recover. It is evident the jury heeded the court's instructions in framing its answer to the special question. The plaintiff may not here attack the answer to special question No. 4 as being a conclusion when it was based upon language alleging contributory negligence which he did not attack in his motion to make definite and certain and to strike.

Equally important is the fact that during the course of the trial the defendant made a timely request to have certain special questions submitted to the jury, and questions 7 (a), 7 (b), and 8 (a) and 8 (b) as requested are practically identical but in reverse order to questions 1, 2, 3 and 4 submitted to the jury. When the court was considering defendant's requested special questions the plaintiff submitted a brief entitled "Plaintiff's Objections and Comments Concerning Special Questions Requested by Defendant." The memorandum brief pointed out that the defendant had requested eight special questions to be submitted to the jury and that he objected to special questions numbered 1 through 6, inclusive, as requested. We quote from the memorandum brief:

"*As to questions 7 and 8, it is believed that they are proper,* however, they should be reversed. 8 should be asked first and the one numbered 7 should follow the one numbered 8. If 8 (a) (special question No. 1) is answered in the negative then 8 (b) (special question No. 2) and 7 (a) (special question No. 3) and 7 (b) (special question No. 4) require no answers. The logical manner in which questions of negligence should be approached is for the jury to first determine whether defendant was guilty of negligence which caused plaintiff's injuries, and the *jury should not be concerned with alleged contributory negligence of plaintiff* until after the jury has found that the defendant is guilty of negligence which caused plaintiff's injuries." (Emphasis supplied.)

The plaintiff had the opportunity to object to the special questions he is now disputing and since he did not do so he may not now impeach special questions 3 and 4 and their answers. In *Shivers v. Carlson,* 178 Kan. 170, 283 P. 2d 450, we said:

"... Appellant did not object to special question No. 17 and 18. *Neither did he request a special question as to whether his contributory negligence, if the jury should so find, was a proximate cause of the collision and the resulting damage.* Since he did not enter his objection at the proper time, he is not in a good position to complain now." (l. c. 177.) (Emphasis supplied.)

See, also, the recent cases of *McKinley-Winter Livestock Commission Co. v. Fletcher,* 185 Kan. 637, 347 P. 2d 248, and *Bateman v. Crum,* 186 Kan. 1, 348 P. 2d 639, which are directly in point. Nowhere does the plaintiff argue that he made any request for special questions concerning contributory negligence of the plaintiff and whether his contributory negligence, if the jury should so find, was a proximate cause of his injuries; nor did he ask for any other special questions.

We cannot overlook the fact that both sides had opportunity to request the court to require the jury to be more specific in its answers to special questions. After the reporter read the verdict and answers to special questions and the jurors were asked if those were their answers and verdict, the court asked counsel, "Gentlemen, are there any other matters to be taken up . . . before we dismiss the jury." As previously indicated, the answers of counsel were in the negative. Thereafter, the verdict and answers to special questions were accepted and the jury was discharged. If the plaintiff was dissatisfied with the answers to the special questions he should have moved the court to require the jury to return more definite answers, and he may not now be heard to complain.

Did the court err in rendering judgment in favor of the defendant on the answers to the special questions? If the jury's special findings of fact are inconsistent with the general verdict and consistent with each other, the special findings control the general verdict and the district court may give judgment based upon the special findings. (G. S. 1949, 60-2918; *Taylor v. Johnson,* supra.) Little has here been said concerning the answer to special question No. 5. Perhaps under the allegations of the amended answer it was properly submitted. The answer indicates the jury also considered that some third person's negligence proximately caused the injuries, perhaps plaintiff's fellow workmen. Be that as it may, the answer can be easily reconciled with one version of the evidence which the jury had a right to believe. As thus construed,

the answer is not inconsistent with the answers to special questions Nos. 3 and 4. As we have seen, the jury's answers to those special questions constituted a complex finding based upon the pleadings, the evidence, the instructions, and the law of the case, that the plaintiff's negligence was a contributing factor in producing his injuries and as such prevents him from recovering against the negligent defendant. That being the case, the answers to those special questions were contrary to the general verdict in favor of the plaintiff.

Having fully and carefully reviewed the record we are of the opinion that no reversible error exists and the district court did not err in overruling the plaintiff's motion to strike the answers to special questions and in sustaining the defendant's motion for judgment notwithstanding the general verdict. The judgment is affirmed.

WERTZ, J. (dissenting): I am unable to agree with the majority opinion that the answers to the special questions in this case were contrary to the general verdict in favor of the plaintiff.

In considering this matter we must bear in mind the often-repeated rule of this court that a general verdict imports a finding in favor of the prevailing party upon all issues in the case not inconsistent with the special findings, and nothing will be presumed in favor of the special findings. They shall be given such a construction, if possible, as will bring them into harmony with the general verdict. (*Kitchen v. Lasley Co.*, 186 Kan. 24, 29, 348 P. 2d 588; *Hurley v. Painter*, 182 Kan. 731, 736, 324 P. 2d 142; *King v. Vets Cab, Inc.*, 179 Kan. 379, 384, 295 P. 2d 605, 56 A. L. R. 2d 1249; *Cain v. Steely*, 173 Kan. 866, 252 P. 2d 909; *Hubbard v. Allen*, 168 Kan. 695, 701, 215 P. 2d 647.) In considering answers of the jury to the special questions, the court is not permitted to isolate one answer and ignore others, but all are to be considered together, and if one interpretation leads to inconsistency and another to harmony with the general verdict, the latter is to be adopted. In order to sustain a motion for judgment on the findings it is not sufficient that there be some inconsistency among the findings; they must be so contrary to the general verdict as to clearly *compel* the court to overthrow the verdict and render a contrary verdict as a matter of law. (*Creten v. Chicago, Rock Island & Pac. Rld. Co.*, 184 Kan. 387, 400, 337 P. 2d 1003; *Sparks v. Guaranty State*

*Bank,* 182 Kan. 165, 168, 318 P. 2d 1062; *Snyder v. City of Concordia,* 182 Kan. 268, 320 P. 2d 820; *Dick's Transfer Co. v. Miller,* 154 Kan. 574, 119 P. 2d 454; *Lee v. Gas Service Company,* 166 Kan. 285, 288, 201 P. 2d 1023.) It is another well-established rule in this state that a general finding in the nature of a conclusion, if contradicted by special or detailed findings, cannot prevail but are controlled by, and must yield to, such detailed findings of ultimate facts. (*Harrison v. Travelers Mutual Cas. Co.,* 156 Kan. 492, 134 P. 2d 681.)

An analysis of this case, under the foregoing rules, will show that the answers given to the special questions asked *are* in harmony with the general verdict. Defendant's motion for judgment on the answers to the special questions notwithstanding the general verdict concedes, for that purpose, that the answers are supported by the evidence. (*Cain v. Steely,* supra.)

As can be seen by the answer to question No. 1, the jury found that the defendant company was guilty of negligence which proximately caused the plaintiff's injuries. In response to question No. 2, the jury found that the specific acts of negligence on the part of the defendant were the putting of the power lines over private property and the failure to post warning signs. In response to question No. 3, the jury found the plaintiff negligent, and in its answer to question No. 4, found that plaintiff's negligence was the failure to use ordinary care for his own safety.

In the case of *Hultberg v. Phillippi,* 169 Kan. 610, 220 P. 2d 208, this court was confronted with a similar situation as here presented. In that case one of the questions to the jury and the answer thereto was as follows:

"7. Did Mrs. Hultberg [plaintiff], by her negligence, contribute to her injury?

"Answer: Yes."

In that case the defendant contended that the answer definitely settled the question of the plaintiff's contributory negligence and barred recovery. This court said:

"We cannot agree. In the first place, the question calls for a conclusion of the jury as a matter of law rather than a finding on a specific question of fact. It is definitely general in character and is purely in the nature of a conclusion. Such general finding or conclusion, if contradicted by detailed findings, cannot prevail, but is controlled by and must yield to the special or

detailed findings of ultimate facts. (Citing *Harrison v. Travelers Mutual Cas. Co., supra.*)"

The answer given to question No. 3 in the instant case is the same as that answer given in the *Hultberg* case.

The ordinary definition of negligence is lack of due diligence or care, and a legal definition is that it is failure to exercise the care that the circumstances justly demand. The negligence found must have been the proximate or legal cause of the injury to bar recovery. (*Rowell v. City of Wichita,* 162 Kan. 294, 300, 176 P. 2d 590.) The answer given by the jury in the instant case in response to question No. 4 was nothing more than a definition of negligence, and under these circumstances it must be considered a conclusion of law. No specific acts of the plaintiff that would constitute contributory negligence were given by the jury. No question was asked whether such negligence was a proximate cause of the injury, and the general verdict for the plaintiff imports a finding such negligence was not a proximate cause of the injury.

Early in the history of Kansas this court recognized that the plaintiff's fault must also *proximately* contribute to his injury in order to constitute any grounds of defense. (*Sawyer v. Sauer,* 10 Kan. 466, 472; *K. P. Rly. Co. v. Pointer,* 14 Kan. 37, 38.) Even though the plaintiff was negligent, if the negligence of the defendant was the *direct, immediate* and *proximate* cause of the injury, the plaintiff would be allowed to recover. (*Pacific Rld. Co. v. Houts,* 12 Kan. 328.) This principle has been recognized and approved by text writers. In 3 *Cooley on Torts,* § 486, p. 413, (4th ed.) it is stated:

"The negligence that will defeat a recovery must be such as *proximately* contributed to the injury. The remote cause will no more be noticed as a ground of defense than as a ground of recovery." (Emphasis supplied.)

(See also, 1 *Shearman & Redfield, Negligence,* §61, p. 153, [6th ed. 1913].)

Cases in this jurisdiction are replete with the general rule that in order to bar the plaintiff's recovery it is necessary that his negligence contribute to *and be a proximate cause* of his injury. In the case of *Losey v. Railway Co.,* 84 Kan. 224, 231, 114 Pac. 198, it is stated:

"In order to constitute contributory negligence it must *be the proximate cause* of the injury . . .; that is, one without which the injury would not have occurred. (Citing authorities.)" (Emphasis supplied.)

*Hutchens v. McClure*, 176 Kan. 43, 47, 269 P. 2d 473, states:

"Negligence to bar the plaintiff from recovery must contribute to *and be the proximate cause* of the injury complained of." (Emphasis supplied.)

In *Scott v. Bennett*, 181 Kan. 410, 415, 312 P. 2d 224, this court stated:

"The jury simply found that the plaintiff was guilty of not checking traffic thoroughly but that such fact did not contribute to the accident as *a proximate cause*. One may be guilty of negligence and still not be barred from recovery, under such circumstances." (Emphasis supplied.)

The latest approval by this court of the general rule that the negligence of the plaintiff will not bar his recovery unless it is *the proximate cause* of his injury was expressed in the case of *Jefferson v. Clark*, 190 Kan. 520, 523, 376 P. 2d 923. There two instructions in that case were under consideration by the court. Those instructions and the comments made by this court in regard to them are set out as follows:

" 'INSTRUCTION No. 24.

" 'By "contributory negligence" is meant the failure on the part of one who sustains injuries to use ordinary care for his own safety and by reason of which he helped to cause or bring about the injuries complained of, but for which contributory negligence at the time and place complained of the injuries would not have occurred. The burden of proving such contributory negligence is upon the person urging that claim. Contributory negligence is never presumed.

" 'INSTRUCTION No. 25.

" 'One seeking to recover damages from another upon the grounds of negligence is barred from such recovery when his own negligence contributes *directly and proximately* to his injuries. If you find by a preponderance of the evidence that the negligence of the plaintiff was the *direct and proximate cause* of the collision, your verdict should be for the defendant.' (Emphasis supplied.)

"The two instructions cover much the same ground and actually are somewhat inconsistent. This inconsistency goes to the matter of defining proximate cause and under what circumstances contributory negligence is the proximate cause. We believe that instruction No. 24 is inaccurate and contrary to instruction No. 25 which seems to be the rule applied in this state."

The rule that the negligence of the plaintiff in order to bar his recovery must be the proximate cause of his injury is based on justice and logic. Application of the rules of negligence and proximate cause should be consistent. In the case of *Concannon, Administrator v. Taylor*, 190 Kan. 687, 378 P. 2d 82, this court affirmed a verdict for the defendant. In that case the jury found the de-

fendant was negligent but his negligence was not the proximate cause of the deceased's injury and therefore was not liable in damages. If a defendant is negligent but such negligence is not the proximate cause of the plaintiff's injury and defendant is therefore not liable for damages it would then follow that where a plaintiff is negligent but such negligence is not found to be the proximate cause of his injury he should not be barred from recovery.

Proximate cause has been defined many times in this jurisdiction. In the case of *Rowell v. City of Wichita,* 162 Kan. 294, 301, 176 P. 2d 590, it is stated:

"In the multitude of decisions there are many definitions of the term 'proximate cause' but one of the most widely quoted is that the proximate cause of an injury is that cause which in the natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the injury would not have occurred. The proximate cause is an essential element of liability for negligence. *Negligence, no matter of what it may consist, cannot create a cause of action, unless it is the proximate cause of the injury of which the complaint is made.* (Citing cases.)" (Emphasis supplied.)

We may justifiably add, nor can negligence bar recovery unless such negligence is the proximate cause of the injury of which complaint is made.

An examination of the answers to questions No. 1 and No. 2 shows the jury found the defendant company was guilty of negligence which *proximately caused* the injuries of the plaintiff and that the defendant's negligence consisted of the *specific acts* of putting its lines over private property and not posting signs. In response to questions No. 3 and No. 4 the jury found the plaintiff was negligent and that such negligence was the failure to exercise ordinary care for his own safety. We again repeat that there were no *specific acts* of negligence on the part of the plaintiff given by the jury. When considered in the light of the general verdict, it is inherent that the jury felt that although the plaintiff was negligent, his negligence was not a proximate cause of his injuries, and that the negligence of the defendant alone was the proximate cause of the plaintiff's injuries. When the answers to the questions are given this construction, they are in harmony with the general verdict. I find nothing in the answers to the special questions that compels the overthrowing of the general verdict, and the general verdict should control. Moreover, the jury returned a verdict in plaintiff's favor for $5,000. Under our former opinion (*Henderson v. Kansas*

*Power & Light Co.,* 188 Kan. 283, 362 P. 2d 60) the trial court should have granted a new trial because of the failure of the verdict to fairly compensate the plaintiff for his grevious personal injuries sustained.

I am of the opinion that the judgment of the trial court should be reversed and a new trial ordered.

ROBB, J., joins in the foregoing dissenting opinion.