Barbara **MEREDITH**, Plaintiff-Respondent,

v.

**MISSOURI PACIFIC RAILROAD COMPA-NY and Martin A. Shell, Defend-ants-Appellants.**

No. 54972.

Supreme Court of Missouri,
Division No. 1.

May 10, 1971.

Lyman Field, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for respondent.

Hilary A. Bush, Kent Snapp, James L. Burgess, Johnson, Lucas, Bush & Snapp, Kansas City, for appellants.

WELBORN, Commissioner.

Action for damages for personal injury and property damage by Barbara Meredith against Missouri Pacific Railroad Company and Martin A. Shell, its engineer, arising out of train-auto collision in Ottawa, Kansas, on August 20, 1965. Jury returned verdict for defendants. Trial court sustained plaintiff's motion for new trial because of error in defendants' contributory negligence instruction. Defendants appeal. On this appeal, they attack trial court's sustaining plaintiff's motion for new trial and assert that, in any event, plaintiff either made no submissible case or was guilty of contributory negligence as a matter of law. In view of these contentions, a recital of the facts, in the light most favorable to plaintiff, is necessary.

The Missouri Pacific Railroad tracks run east and west in Ottawa. For one block west of Main Street, a main north-south business street in Ottawa, the tracks are located in First Street. Beyond Walnut Street, the first street west of Main, the tracks run along First Street for four to five blocks. The tracks are straight and the ground level for four blocks west of Main. Auto traffic at the First Street-Main Street intersection is controlled by electric signals. There are also red flashing railroad crossing signals at the intersection. The flashing signals are activated by eastbound trains crossing a switch 626 feet west of the First-Main intersection. That switch also causes all electric signals at the intersection to become red until the train passes. Main Street is approximately 70 feet wide at the intersection, with a 14'7" sidewalk along its west side. First Street is 60 feet wide. West of Main, the streets intersecting First are Walnut, Locust, Elm and Maple, in that order.

The collision occurred at around 2:00 P.M. on a Friday. The weather was clear,

streets dry. The train involved was a 120-car freight, pulled by five diesel units. It entered Ottawa from the west.

Plaintiff was driving a 1960 Chevrolet sedan south on Main Street. When she reached the First Street intersection, she had a green light, but she slowed to a stop as she intended to turn right into First Street and go west. She began her turn and had reached a point about even with the west edge of the sidewalk on Main when she changed her mind and decided to continue south on Main. She turned to the left and reached the center of First Street and the railroad tracks with her auto headed south. When she reached the center of the street, an eastbound pickup truck waiting for the traffic signal blocked her progress and Mrs. Meredith stopped her auto astride the tracks. While waiting for the light to change so that the pickup could move, Mrs. Meredith looked to the west and for the first time saw the train, between Elm and Locust Streets, approaching at 25 to 30 miles per hour. She put her auto in reverse in order to back off the tracks. She had moved about two feet when another pickup appeared at the rear of her car and stopped, forcing her to stop backing. She shifted to forward gear, intending to angle out to the east and get off the track. As she did so, the motor died and she was unable to start it. With the train approaching nearer, she got out of the car and began running to the north. While she was running, the train struck the auto and knocked it against Mrs. Meredith. She fell to the ground and was injured. The details of her injuries are not here important. According to the brakeman in the cab of the head locomotive, plaintiff was struck on the left hip by the left rear fender fin of her car. He said: "I would say probably less than a step would have put her in the clear."

Plaintiff submitted her case on primary negligence of excessive speed and failure to slacken speed to avoid a collision. Defendants submitted contributory negligence by Instruction No. 4, as follows:

"Your verdict must be for the defendants whether or not defendants were negligent, if you believe:

First, plaintiff either:

failed to keep a careful look out for oncoming trains, or turned her automobile so as to proceed in the opposite direction on a street in the business district of Ottawa, Kansas, or

knew, or by the exercise of ordinary care could have known that there was a reasonable likelihood of a collision in

time thereafter to have

stopped, or

swerved, or

have left her automobile and proceeded to a place of safety on foot,

but defendant failed to do so; and

Second, plaintiff's conduct in any one or more of the respects submitted in paragraph First, was negligent, and

Third, such negligence of plaintiff caused or directly contributed to cause any damage plaintiff may have sustained."

The trial court sustained plaintiff's motion for a new trial on the grounds that the omission of the word "directly" before the word "caused" in paragraph "Third" of the instruction caused the instruction to be erroneous and that "such failure to conform to MAI 28.01 [now 32.01] was prejudicial."

Respondent, in support of the trial court's ruling, relies primarily upon the decision of the court en banc in Brown v. St. Louis Public Service Co., Mo.Sup., 421 S.W.2d 255. In that case, the order of the trial court granting a new trial because of omission of the word "direct" before the word "result" in a damages instruction (MAI 4.-01) was affirmed. The rule laid down in Brown is (421 S.W.2d 259):

"Accordingly, where there is deviation from an applicable MAI instruction which

does not need modification under the facts in the particular case, prejudicial error will be presumed unless it is made perfectly clear by the proponent of the instruction that no prejudice could have resulted from such deviation."

■ Appellants contend that, since this case was tried under Kansas law, there was no applicable MAI and therefore there could have been no deviation. Kansas law, of course, does not apply as to procedure and procedural questions. Neve v. Reliance Insurance Company of Philadelphia, Mo. App., 357 S.W.2d 247, 249 [1, 2]. The form of instruction is a procedural matter governed by the law of Missouri. If the Missouri Approved Instructions include an instruction which correctly states the substantive law of Kansas, the approved instruction must be given. Supreme Court Rule 70.01, V.A.M.R. Kansas law of proximate cause involving contributory negligence does not differ from that of Missouri. Kansas requires that contributory negligence, in order to bar recovery, be a direct or proximate cause of injury. Jefferson v. Clark, 190 Kan. 520, 376 P.2d 923, 925 [2]. The case of Henderson v. Kansas Power & Light Company, 191 Kan. 276, 380 P.2d 443, does not establish any contrary law. A contributory negligence instruction which was given in that case did not contain either the word "directly" or "proximately." However, the adequacy of the instruction was not an issue on the appeal.

■ There was an applicable MAI for this case. Defendants' instruction deviated from MAI. The trial court found the deviation was prejudicial to plaintiff. Under the authority of Brown v. St. Louis Public Service Co., supra, the order of the trial court must be affirmed, unless defendants are correct in either of their contentions that plaintiff failed to make a submissible case or that she was guilty of contributory negligence as a matter of law.

■ As above stated, plaintiff submitted excessive speed and failure to slacken speed to avoid a collision. For purpose of this appeal, if plaintiff made a submissible case on either of these submissions, defendants are not entitled to judgment here. Robinson v. Wampler, Mo.Sup., 389 S.W.2d 757, 762 [6, 7].

On the issue of speed, plaintiff relied on an ordinance limiting speed of trains in the Ottawa city limits to 20 miles per hour. Plaintiff testified that when she first saw the train, it was going 25 to 30 miles per hour and that, when she jumped out of her car, the train's speed was between 20 and 25 miles per hour. Appellants concede that this testimony supports a charge of excessive speed as negligence but assert that plaintiff's evidence failed to show that such speed was the proximate cause of the collision.

Under Kansas law, speed in violation of a city ordinance, must be the proximate cause of injury for liability of a railroad for negligence based upon excessive speed. Vance v. Union Pac. R. Co., 133 Kan. 11, 298 P. 764, 765(1). Here appellants rely, in their argument, on the absence of evidence showing braking and stopping distances of the train, travelling at the speed testified to by plaintiff and travelling within the 20-mile limit set by the ordinance. The argument is that there was no proof that the train could have been stopped or slowed in time to avoid the accident had it been travelling at a lawful speed. However, proof of stopping distance or how much the train might have been slowed is not the only way of relating excessive speed to a collision such as that here involved.

■ In view of the fact that the plaintiff, by the testimony favorable to her, was only a step short of escaping from her stalled vehicle, whether the speed of the train was the proximate cause of her injury was for the jury. Hoelzel v. Chicago, R. I. &. P. Ry. Co., 337 Mo. 61, 85 S.W.2d 126, 128 [1]. This is particularly true in the circumstances of this case, where the train, operating in a public street, had rights only "about equal" to those of the

travelling public using the street. Atchison, T. & S. F. Ry. Co. v. Withers, 69 Kan. 620, 78 P. 451.

Plaintiff's testimony, on cross-examination, that, had the train been moving slower, she would have taken more time to try and start her auto, and that, had the train been moving faster, she would have left the car sooner, does not eliminate consideration of speed as a proximate cause of the injury. The jury had to consider what had occurred, not hypothetical situations and plaintiff's subsequent reaction to such hypothetical conditions.

Inasmuch as plaintiff did make a submissible case on the issue of excessive speed, we need not consider the second issue submitted by plaintiff of failure to slacken in order to avoid a collision.

■ Appellants also argue that, in any event, plaintiff was guilty of contributory negligence as a matter of law and therefore, judgment should be entered for appellants. The first charge is that plaintiff made a U-turn in front of the train in violation of a city ordinance and that such act was negligence and the proximate cause of plaintiff's injury. At best the evidence presented a factual issue on this question. Plaintiff denied that she was making a U-turn. Her testimony does not show that she necessarily did so because she had entered First Street by some 14 feet. The railroad's evidence was that the collision occurred some 57 feet west of the west curbline of Main Street. If such was the case, the U-turn charge would present a different question. However, the conflicting evidence was for the jury and this Court cannot say that, as a matter of law, plaintiff was making a U-turn in violation of the city ordinance and that she was thereby guilty of negligence which was the proximate cause of her injury.

Appellants next contend that plaintiff was guilty of contributory negligence as a matter of law because the evidence shows that she was negligent in failing to keep a proper lookout.

Appellants argue that, on plaintiff's testimony, she could see some 1600 feet down the track, that there was no train within her view when she first looked to the west, that she did not look again until the train was 950 feet away, travelling at 25 to 30 miles per hour, and therefore that she must have sat in her automobile, in a position of danger astride the railroad track, for at least 14 seconds without making any effort to look for the train. This time is computed on the theory that the train travelled at least 650 feet at 30 miles per hour between the time it was first within the range of plaintiff's vision until she actually saw the train.

This conclusion does not necessarily follow from plaintiff's testimony. For one thing, her testimony about the distances was elicited largely on cross-examination and her replies clearly show that her statements as to distances were at the best mere estimates, not binding upon her. Lay v. McGrane, Mo.Sup., 331 S.W.2d 592, 596–597 [3–5]; McDonough v. St. Louis Public Service Company, Mo.Sup., 350 S. W.2d 739, 744–745 [3]. The conclusion also assumes that the train would have been travelling throughout the claimed 650-foot distance at the same speed as it was travelling when plaintiff first noticed it. The train crew testified that the train had been travelling at 55 miles per hour before it reached Ottawa. The jury was not required to believe the testimony that the speed had been reduced when the train entered the city limits. Certainly plaintiff's testimony is contrary to that of the crewmen as to the extent of the reduction.

Without belaboring the point further, the matter of failure to keep a proper lookout involved factual considerations to be resolved by the jury. The same is true for the claim of failure to see the pickup truck which blocked plaintiff's path and forced her to stop on the tracks. She testified that she first saw the truck when it appeared in front of her and stopped abruptly. Whether or not her failure to observe it

sooner evidenced failure to keep a proper lookout was for the jury.

The same is true of the charge that plaintiff's failure to get out of her auto sooner was contributory negligence as a matter of law. Whether or not plaintiff acted as an ordinarily careful and prudent person in the circumstances was for the jury. As pointed out in Lytch v. Fleming et al., 115 Kan. 637, 223 P. 1116, plaintiff owed the railroad a duty to get her auto off the track. It was for the jury to judge plaintiff's actions. Her conduct is not to be condemned as a matter of law.

The case of Vail v. Thompson, 360 Mo. 1009, 232 S.W.2d 491, and the Kansas law there applied, as set forth in Jamison v. A., T. & S. F. Ry. Co., 122 Kan. 305, 252 P. 472, does not control this aspect of the case. There, negligence of a driver in failing to leave his stalled auto was involved. However, the question in those cases was whether, under the Kansas last clear chance rule, the plaintiff's negligence had ceased. The negligence which the court found as a matter of law was in the plaintiff's driving upon the track in the face of the oncoming train. 232 S.W. 2d 495 [5, 6]. That is not the question here presented.

The trial court's ruling on the motion for new trial was not erroneous. Appellants are not entitled to judgment in any event. Therefore, the order granting a new trial is affirmed and the cause remanded.

Affirmed and remanded.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., BARDGETT, J., and SEMPLE, Special Judge, concur.

HOLMAN, J., not sitting.